PETERS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 211 (1974). Argued September 9, 1975.—*
*Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 420.)

For the plaintiff in error there were briefs by *Charlene R. Bohl* and *Raymond H. Thoenig,* both of Wisconsin Indian Legal Services, and oral argument by *Ms. Bohl.*

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILKIE, C. J. This review involves the 1973 conviction, following a jury trial in Sheboygan county, of the plaintiff in error (hereinafter defendant) on charges of theft, burglary and obstruction of an officer. Defendant seeks review here of the denial of his motion for a new trial and raises issues in connection only with the burglary and obstruction of an officer convictions.

We reverse and order a new trial on these two charges. We do so in the interest of justice, pursuant to sec. 251.-09, Stats., and because the entire proceeding was infected by the trial together of these two charges without proper cautionary instructions so that the defendant was unfairly penalized for asserting his alibi defense as to the alleged burglary.

## The burglary.

Many of the facts surrounding the early morning burglary on Sunday, July 29, 1973, of the Zwei Herzen Tavern in Sheboygan are undisputed. At about 3:30 that morning, when a motorist came upon a white station wagon in front of the tavern, two surprised individuals jumped into the station wagon and took off, leaving a heavy black safe on the street. The motorist gave chase, and, after losing sight of the station wagon for a moment, discovered it a few minutes later up on a curb and empty. A resident of the neighborhood where the car had ground to a halt was startled out of her sleep and saw two men jump out of the car and flee. The car was owned by defendant's wife, and defendant and his friend, Robert

Gage (alias Robert Adams), were using the car that night to visit various bars, including the Zwei Herzen.

Later on the morning of July 29th, the owner of the tavern determined that bottles of liquor, cigarettes, a small amount of money, a cardboard box, and a garbage pail were missing from the premises. Except for the money, all of these items, as well as a crowbar, were discovered that morning by Mrs. George Goeres in the bushes in her backyard near an alleyway. Close by this alleyway was the yard of the house in which defendant, his wife, and Robert Gage were then residing.

At trial it was established that the defendant was in the Zwei Herzen Tavern earlier that night, that the safe that was eventually hauled into the street was visible to all tavern patrons; two persons used defendant's wife's car in the burglary, and defendant and Robert Gage were seen together, using that car, several times that night; tar marks were found at the point of entry into the tavern, and defendant and Robert Gage were employed as roofers and had tar pails in the car they were using.

At the trial, two of defendant's friends, Conrad and Carol Kline, testified that they were with the defendant at about 12:30 a.m. at a bar, persuaded him because he was so drunk to give his car keys to Robert Gage, and then saw him get into a car as he was walking away from the bar. Defendant, however, had no recollection of ever having seen the Klines that night, but definitely recalled having given his car keys to Robert Gage. Wallace Peters, defendant's brother, testified that he picked up his inebriated brother at about 1:30 a.m. as he was walking down the street. Daniel Mistrioty, a Milwaukee friend of the defendant, stated that defendant was brought to his house in a state of intoxication by Wallace Peters, and was immediately put to bed.

Other testimony contradicted this version of events. Lupe Torres testified that defendant and another man appeared at her door at 4 a.m., and said they needed to borrow a car because of an "emergency." Jose Rodriquez and Gilberto Canales testified that between 4 and 5 a.m. defendant and a man fitting Gage's description came to the Rodriquez house and remained there until Gus Torres returned about 8 a.m. When Torres arrived, Peters asked him and Canales to go look for a box with some liquor in it that was in an alleyway behind his house. By this time, however, Mrs. Goeres had dutifully removed the stolen goods and placed them in her garage. But she did testify that she saw two men in a car matching the description of Torres' car drive slowly through the alleyway at about 8:30 or 9 a.m. Torres testified that when he and Canales returned to the Rodriquez house without the box, Peters told them not to worry because it was "hot anyway." Later that morning, at about 11 a.m., the police arrived at the Rodriquez house, and, according to the testimony of Rodriquez, Torres, and Canales, Peters and the man he was with crawled under the bed and hid.

*Obstruction of an officer.*

On the Monday morning following the burglary, defendant voluntarily went to the police station with his wife and probation officer. There he presented his exculpatory account of his activities on the night of the burglary.

After a John Doe hearing was held about this burglary, the district attorney charged Peters not only with theft and burglary, but also with obstructing an officer in violation of sec. 946.41(2)(b), Stats. This section provides that a person is guilty of obstructing an officer if he "knowingly [gives] false information to the officer with intent to mislead him in the performance of his duty."

*Joinder of trial on burglary and obstruction of an officer charges.*\*

The offense of burglary and obstructing an officer were joined in the same amended information. When these crimes were tried together before the same jury and at the same time, counsel for the defendant at no point made any objection to the joinder of the two charges on the grounds that such joinder would prejudice the jury against the veracity of the defendant's alibi. Nor did the counsel for defendant put forward any cautionary instructions to the effect that the evidence offered on the obstructing charge could not supply a defect of proof on the main burglary charge.

We conclude that even though trying both charges together was not error in this case and the failure to deliver proper cautionary instructions was not error in view of the failure of defendant's counsel to request such instructions, the giving of such an instruction was the only means of adequately protecting the defendant against the double-teaming effect of such joinder. We conclude that the lack of such an instruction caused an apparent miscarriage of justice, and that a new trial free of this defect may very well produce a different result.[1] Accordingly, it is proper for this court to exercise its power of discretionary reversal under sec. 251.09, Stats., and to grant a new trial in the interest of justice.

On the charge of "obstructing an officer" the defendant contends that his constitutional right to present a defense, including an alibi defense, at trial[2] precludes

\* The theft charge was also joined at trial but any issues connected with such joinder are not involved here since no review is sought of that conviction.

[1] *Sheehan v. State* (1974), 65 Wis. 2d 757, 769, 223 N. W. 2d 600; *Okrasinski v. State* (1971), 51 Wis. 2d 210, 219, 186 N. W. 2d 314.

[2] *See: Chambers v. Mississippi* (1973), 410 U. S. 284, 93 Sup. Ct. 1038, 35 L. Ed. 2d 297; *Washington v. Texas* (1967), 388 U. S.

prosecution for obstructing an officer under these circumstances.

Although previous cases in this state on convictions for obstructing an officer have always involved physical abuse of an officer or officers while making an arrest or performing other official duties,[3] the statute permits conviction for obstruction of an officer under circumstances where efforts to intentionally mislead an officer may be involved as were allegedly present here. However, before such a charge should be made under sec. 946.41 (2) (b), Stats., the district attorney should have sound reasons for believing that statements made by a suspected defendant to the police in terms of an alibi were knowingly and intentionally made for the purpose of deceiving and misleading the police, and not simply out of a good-faith desire to defend against an accusation of crime.

Sec. 971.12 (1) and (4), Stats., provides that two crimes may be joined in one information and tried together if they are "of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan." The two crimes charged here, "burglary" and "obstructing an officer," are "connected together" since the charge of obstructing an officer is based upon an alibi defense to the charge of burglarizing the tavern.

A more difficult problem presents itself here in regard to whether the joinder of these two crimes, while techni-

14, 87 Sup. Ct. 1920, 18 L. Ed. 2d 1019; *In re Oliver* (1948), 333 U. S. 257, 68 Sup. Ct. 499, 92 L. Ed. 682, which all contain general statements about the due process right to present a defense at trial. In *Williams v. Florida* (1970), 399 U. S. 78, 90 Sup. Ct. 1893, 26 L. Ed. 2d 446, where the question was whether a notice of alibi statute was constitutionally infirm, the right to present an alibi defense at trial was assumed.

[3] *See, for example: State v. Elbaum* (1972), 54 Wis. 2d 213, 194 N. W. 2d 660; *State v. Christopher* (1969), 44 Wis. 2d 120, 170 N. W. 2d 803.

cally proper, may still have been prejudicial to the defendant. Sec. 971.12 (3), Stats., provides that a trial court may order a severance if it appears that an otherwise proper joinder may prejudice the rights of the defendant. In this case, however, it cannot be said that the trial court abused its discretion in not ordering a severance. The general rule is that, if evidence of each crime is admissible in regard to the other crime, then the two crimes may be tried together.[4] The reason for the lack of prejudicial joinder in such cases is that, even if there were separate trials on each crime, the same evidence that would be admissible at the joint trial would also be admissible at the separate trial, and so there is no ground for claiming prejudice.

In this case evidence of the burglary is admissible on the charge of obstructing an officer in order to show the motive for the obstruction. Conversely (and contrary to the defendant's arguments), evidence regarding fabrication of alibi is admissible on the burglary count. The probative value of such evidence on the burglary count is slight, but it does tend to show an awareness by the defendant that his defense to the main charge is so weak that he needs to fabricate evidence. From this awareness of weakness the trier of fact can legitimately infer a consciousness of guilt on the part of the defendant in regard to the main charge.[5] It must be emphasized, however, that fabrication of alibi cannot be relied upon by the state as affirmative proof of elements as to which it has

[4] *Bailey v. State* (1974), 65 Wis. 2d 331, 222 N. W. 2d 871; *Holmes v. State* (1974), 63 Wis. 2d 389, 217 N. W. 2d 657.

[5] *Samuels v. United States* (10th Cir. 1968), 397 Fed. 2d 31; *Fox v. United States* (9th Cir. 1967), 381 Fed. 2d 125; *United States v. Steel* (D. C. N. Y. 1965), 238 Fed. Supp. 580, 38 F. R. D. 421; *Holt v. United States* (9th Cir. 1959), 272 Fed. 2d 272; *Wilson v. United States* (1896), 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090; see also: McCormick, *Evidence* (1963, 2d ed.), p. 660, sec. 273, note 54.

the burden of proof. The state must prove beyond a reasonable doubt all elements of the crime of burglary by evidence independent and separate from the evidence relating to fabrication of alibi. In accord with this result is a line of federal cases which have held that it was not prejudicial to join charges involving false exculpatory statements with other charges regarding which the allegedly false statements were made.[6]

The danger of prejudice in the trial together of two such charges can be overcome by the giving of a proper cautionary instruction. This is illustrated by the recent case of *United States v. Pacente*.[7] In *Pacente,* a Chicago policeman was tried on two charges: making false declarations before a grand jury and extorting money from a liquor store owner. The Court of Appeals of the Seventh Circuit decided that the danger of prejudice could be overcome by the giving of a proper cautionary instruction. The approved instruction in *Pacente* reads as follows:

" 'The indictment that I am going to refer to in a few moments is not evidence of the defendant's guilt, it is simply, as I told you before [presumably on voir dire], the manner by which the government accuses a person of a crime and you should not be prejudice[d] against a defendant because an indictment has been returned against him. . . .

---

[6] *United States v. Sweig* (2d Cir. 1971), 441 Fed. 2d 114. *See also: United States v. Isaacs* (7th Cir. 1974), 493 Fed. 2d 1124 (joinder of perjury with conspiracy, bribery, mail fraud, and tax evasion) ; *United States v. Steel, supra,* footnote 5 (joinder of false declarations to Securities and Exchange Commission investigators with conspiracy and securities registration violations) ; *United States v. Cooper* (Temp. Emergency Ct. of App. 1973), 482 Fed. 2d 1393 (joinder of false declarations to Internal Revenue Service agent with illegal rent increases) ; *United States v. Kahn* (D. C. N. Y. 1971), 340 Fed. Supp. 485 (joinder of perjury with conspiracy and racketeering).

[7] (7th Cir. 1974), 503 Fed. 2d 543.

" 'You are instructed to consider the testimony given by the defendant Pacente before the Grand Jury on February 22nd only as evidence under Count 2 of the indictment and you should not consider it as evidence on any other count in the indictment. . . .

" 'Now, there are two counts in this indictment, and, as I have told you, each one charges a separate crime. You should consider each one separately. The defendant's guilt or innocence of the crime charged in one count should not affect your verdict on the other count. . . .' "[8]

In the instant case only the first part of this instruction was given. Pursuant to Wisconsin Jury Instructions—Criminal, Part I, 145, the jury was instructed that an information was nothing more than a written, formal accusation, that it could not be considered as evidence against the defendant, and that it did not raise any inference of guilt. The jury was not clearly and unequivocally instructed that it could not use the evidence relating to making false statements to an officer to find the defendant guilty of the crime of burglary. Such a cautionary instruction must be given in clear and certain terms, because otherwise there is a strong likelihood that the jury will regard the evidence on the obstructing-an-officer count as sufficient in itself to find the defendant guilty of burglary.

The particular instruction given in *Pacente* overlooks the previously discussed rule that evidence relating to fabrication of alibi, while only slightly probative, nevertheless still may be considered on the burglary charge to show consciousness of guilt. The point which must be made is that the jury must not employ such evidence as affirmative proof of elements of the crime of burglary, for which the state must introduce separate and independent evidence showing guilt beyond a reasonable doubt.

[8] *Id.* at pages 547, 548.

*Sufficiency of the circumstantial evidence.*

It is necessary to resolve several other issues raised by the defendant, since these issues may again arise at a new trial. The first of these issues is his challenge to the sufficiency of the circumstantial evidence.

Defendant maintains that the circumstantial evidence adduced at trial was insufficient as a matter of law to sustain a verdict of guilty on the burglary charge. The oft-stated test when this claim is made is whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt.[9] Conversely stated, this rule requires that the evidence, when considered most favorably to the state and the conviction, must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt."[10]

In this case all of the evidence which a jury could rely upon was circumstantial. This is not unusual where burglary is charged, since stealth and secretiveness are the regular features of this crime. Because of the nature of this crime, and because circumstantial evidence can be as probative and sometimes more probative than direct evidence,[11] it is well settled that circumstantial

[9] *State v. Johnson* (1960), 11 Wis. 2d 130, 135, 104 N. W. 2d 379. This remains the landmark Wisconsin case dealing with sufficiency of circumstantial evidence. *State v. Smith* (1967), 36 Wis. 2d 584, 589–592, 153 N. W. 2d 538, also contains a succinct discussion of this issue.

[10] *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183; *Fox v. State* (1973), 60 Wis. 2d 462, 466, 210 N. W. 2d 722.

[11] *Spick v. State* (1909), 140 Wis. 104, 121 N. W. 664; *Schwantes v. State* (1906), 127 Wis. 160, 106 N. W. 237.

evidence alone is enough to convict a defendant of burglary.[12]

However, when circumstantial evidence is relied upon, this evidence must be sufficiently strong to exclude every reasonable hypothesis of innocence.[13] This does not mean that, if *any* of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty. The function of the jury is to decide which evidence is credible and which is not, and how conflicts in the evidence are to be resolved. The jury can thus, within the bounds of reason, reject testimony suggestive of innocence. The rule that the circumstantial evidence must exclude every reasonable theory of innocence refers to the evidence which the jury could have believed and relied upon to support its verdict.[14]

Defendant argues that no inference of guilt can arise from the evidence that Peters knew, only a few hours after the burglary, that a box with liquor had been stolen, and that it was located in the alleyway near his residence. The basis for this assertion is that Peters was not shown to be in possession of recently stolen goods without a suitable explanation, and that only such possession can trigger any kind of inference. But the rule is that such possession raises a rebuttable presumption of

[12] *Oseman v. State* (1966), 32 Wis. 2d 523, 531, 145 N. W. 2d 766; *Hemmis v. State* (1964), 24 Wis. 2d 346, 353, 129 N. W. 2d 209.

[13] *State v. Wilson* (1968), 41 Wis. 2d 29, 33, 162 N. W. 2d 605; *State v. Smith, supra,* footnote 9, at page 591; *State v. Johnson, supra,* footnote 9, at page 136.

[14] In *Johnson v. State* (1972), 55 Wis. 2d 144, 148, 197 N. W. 2d 760, it is said that the rule that "the evidence must be such as to exclude every reasonable hypothesis consistent with the defendant's innocence" is not an appellate test. This language misstates the rule which, accurately stated, is that only the evidence which the trier of fact could have believed and relied upon (not all the evidence adduced at trial) must be consistent with every reasonable theory of innocence. Thus stated, in a way which preserves the trier of fact's task of determining credibility, the rule is an appropriate test on appeal.

guilt.[15] It does not follow that, simply because such a presumption is not available, knowledge of the type and location of stolen goods loses all probative value. Such evidence remains as evidence from which the jury can, in the light of other circumstances shown, make all reasonable inferences.

In regard to the other circumstantial evidence, we have carefully reviewed the record in this case. We conclude that it cannot be said that the circumstantial evidence which the jury may rely upon, when taken together, is so insufficient in probative value that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

*Striking testimony of a defense witness.*

The trial court struck the entire testimony of Robert Gage, a defense witness, when he refused to answer certain questions on cross-examination. Defendant argues that this was an abuse of discretion on two grounds: (1) The unanswered cross-examination questions were irrelevant to the subject matter of the prosecution, and to the questions answered on direct examination, and (2) striking the entire testimony of Gage deprived defendant of due process by denying him the right to present witnesses in his defense.

In *State v. Monsoor*[16] this court held that the trial court had discretion as to striking the testimony of a witness who has refused to answer questions on cross-examination. Consonant with the policy of setting forth specific guidelines for the exercise of discretion, this court indicated that this decision should depend upon whether the questions not answered were relevant and material to the subject matter of the inquiry. In *Monsoor*, the defendant was charged with sale of marijuana

[15] *Gautreaux v. State* (1971), 52 Wis. 2d 489, 495, 496, 190 N. W. 2d 542; *State v. Johnson, supra,* footnote 9, at page 139.
[16] (1973), 56 Wis. 2d 689, 701, 203 N. W. 2d 20.

to an undercover agent. The prosecutor asked a defense witness roommate of the defendant whether he or others had ever smoked marijuana at their residence. When the witness refused to answer, the trial court struck his entire testimony. This court found this to be an abuse of discretion, since these questions were unrelated to whether or not the defendant had made the illegal drug sale. But the trial court was still upheld because striking the direct testimony had not "probably affected the result of the trial,"[17] since this testimony did not in any way counter previous testimony that defendant had made the sale.

Defendant's due process claim regarding his right to present witnesses reveals a distinction between this case (and *Monsoor*) and the federal cases relied upon for the *Monsoor* rule. In all of those cases,[18] and in more recent federal cases,[19] *prosecution* witnesses have refused to answer cross-examination questions, thus raising the question of whether the accused has been deprived of his constitutional right to confront adverse witnesses. In those cases it is the defendant who seeks striking of the testimony in order to preserve this fundamental right. In this case (and in *Monsoor*) where the testimony of a *defense* witness has been stricken, a different constitutional right of the defendant comes into play—his right to present witnesses in his own behalf.[20]

---

[17] *Id.* at page 702.

[18] *United States v. Marcus* (2d Cir. 1968), 401 Fed. 2d 563, certiorari denied, 393 U. S. 1023, 89 Sup. Ct. 633, 21 L. Ed. 2d 567; *Coil v. United States* (8th Cir. 1965), 343 Fed. 2d 573, 579, certiorari denied, 382 U. S. 821, 86 Sup. Ct. 48, 15 L. Ed. 2d 67; *United States v. Cardillo* (2d Cir. 1963), 316 Fed. 2d 606, certiorari denied, 375 U. S. 822, 84 Sup. Ct. 60, 11 L. Ed. 2d 55.

[19] *United States v. Stephens* (6th Cir. 1974), 492 Fed. 2d 1367; *United States v. Rogers* (7th Cir. 1973), 475 Fed. 2d 821.

[20] *Chambers v. Mississippi* (1973), 410 U. S. 284, 93 Sup. Ct. 1038, 35 L. Ed. 2d 297; *Webb v. Texas* (1972), 409 U. S. 95, 93 Sup. Ct. 351, 34 L. Ed. 2d 330; *Washington v. Texas* (1967), 388 U. S. 14, 87 Sup. Ct. 1920, 18 L. Ed. 2d 1019; *In re Oliver* (1948), 333 U. S. 257, 68 Sup. Ct. 499, 92 L. Ed. 682.

Yet this difference does not render invalid or insufficient the test of whether the answered questions are relevant to the subject matter of the inquiry. The defendant's right to present witnesses in his behalf is, as said in *Chambers v. Mississippi*,[21] qualified by the necessity of compliance with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." The *Monsoor* rule is such a rule because denial of prosecutorial cross-examination or relevant and material matters would detract substantially from the reliability of the testimony in question and from the accurate determination of guilt or innocence.

In this case it cannot be said that the answers sought by the prosecutor were irrelevant and immaterial either to the subject matter of the inquiry or to the subject matter of the previous direct examination. Gage testified on direct that, after getting the car keys from the defendant, he picked up "another fellow" who was not Peters. Cross-examination questions regarding the identity of this person, which Gage refused to answer, were directly related to this testimony given on direct. Gage also testified on direct that, after getting the car keys from the defendant, he did not see him again that night or the next morning. Cross-examination questions about his activities that night and the following morning (specifically what he was doing at the time of the burglary and whether he was later at the Rodriquez house), all of which defendant refused to answer, were designed to probe this prior testimony, and were closely related to it. The language in *Monsoor* to the effect that questions about credibility are collateral[22] refers to questions unrelated to the events constituting the crime charged, going to the general credibility of the witness, and not to questions testing the truthfulness of specific testimony

[21] *Supra,* footnote 20, at page 302.
[22] *Supra,* footnote 16, at pages 700–702.

of the witness about facts and circumstances relative to the commission of the crime.

*Motions for immunity by the defense.*

At the postconviction hearing Robert Gage, the friend to whom the defendant had allegedly given the keys to the car involved in the burglary, again took the stand. When questioned about a statement he had given to defendant's trial counsel, in which he admitted that he was one of the burglars but stated that defendant was not the other, he invoked his fifth amendment privilege. He also refused to answer questions about his activities on the night of the burglary, except to claim that Peters did not accompany him on any of these activities. Counsel for defendant then tried unsuccessfully to move the court for a grant of immunity to Gage.

On this review, counsel for defendant argues that criminal defendants should have the right to move the court to grant immunity to witnesses. Under sec. 972.08, Stats., only the district attorney may now make such a motion. Defendant argues that his fundamental constitutional right to have compulsory process for obtaining witnesses in his favor[23] should include a right to move for immunity of witnesses.

This court has faced this issue in three previous cases, and has rejected the notion of a defendant's right to cause the granting of immunity to witnesses. In *Elam v. State*,[24] just as in this case, a witness at a postconviction hearing had allegedly exculpatory evidence in a burglary case, and the defendant attempted to get the trial court to grant this unwilling witness immunity. This court

---

[23] This right was deemed fundamental and made obligatory upon the states in *Washington v. Texas* (1967), 388 U. S. 14, 87 Sup. Ct. 1920, 18 L. Ed. 2d 1019.

[24] (1971), 50 Wis. 2d 383, 184 N. W. 2d 176.

found that the trial court had no authority to grant immunity without a motion by the district attorney. In *Hebel v. State*,[25] the constitutional dimensions of this situation were thoroughly considered, and the court concluded that the lack of opportunity for the defendant to immunize did not constitute a denial of due process. The same result was reached in the recent case of *Sanders v. State*.[26]

*Wardius v. Oregon*,[27] relied upon by the defendant, does not require a different result. In that case the United States Supreme Court held that a state could not, consistent with the dictates of due process, require that a defendant disclose the details of his alibi defense, and at the same time deny him reciprocal discovery rights. Defendant contends that this rationale should extend to a reciprocal right to move for immunity. In support of this contention he also cites cases which hold that the prosecution may be compelled to give up previously exclusive rights to the identity of informers,[28] and to the substance of grand jury testimony.[29] However, in *Wardius* and the cases involving informers and grand jury testimony, all that was involved was disclosure and exchange of evidentiary information. This is quite different from the immunity situation where, in addition to whatever evidence may be obtained from the immunized witness, the criminal laws of the state are suspended in relation to that witness. The state, through the district attorney, has a vital concern in controlling the use of this extraordinary device. Unlike the *Wardius* situation of

[25] (1973), 60 Wis. 2d 325, 330, 331, 210 N. W. 2d 695.

[26] (1975), 69 Wis. 2d 242, 261, 262, 230 N. W. 2d 845.

[27] (1973), 412 U. S. 470, 93 Sup. Ct. 2208, 37 L. Ed. 2d 82.

[28] *Roviaro v. United States* (1957), 353 U. S. 53, 60, 61, 77 Sup. Ct. 623, 1 L. Ed. 2d 639. *See also: Stelloh v. Liban* (1963), 21 Wis. 2d 119, 126, 124 N. W. 2d 101.

[29] *Dennis v. United States* (1966), 384 U. S. 855, 868–875, 86 Sup. Ct. 1840, 16 L. Ed. 2d 973.

pretrial discovery, there are in the immunity situation "significant governmental interests which . . . support the lack of reciprocity."[30]

Lack of reciprocity in moving for immunity is supported by other considerations. The district attorney, as the representative of the state, is charged with the enforcement of the criminal laws of the state. Any suspension of the criminal laws by grant of immunity where the state, through the district attorney, has not waived its right to prosecute by making the motion for immunity would be of questionable validity. Secondly, the potential for disruptive, collusive or frivolous use of such motions by the defense would be present because the defense has nothing to lose and much to gain by such motions. The state, on the other hand, is kept in check by the fact that it has to weigh the question of whether it should forego prosecution of one party in order to gain sufficient evidence for the conviction of other parties. Finally, the United States Supreme Court has repeatedly examined nonreciprocal immunity statutes, without any indication of their constitutional infirmity from this point of view.[31] Such statutes have been said to have "historical roots deep in Anglo-American jurisprudence"[32] and have become "part of our constitutional fabric."[33]

Although previous cases have emphasized that the immunity statute is primarily intended for the benefit of the prosecution,[34] it must not be forgotten that "the duty

[30] Wardius v. Oregon, supra, footnote 27, at page 476.

[31] See: Kastigar v. United States (1972), 406 U. S. 441, 92 Sup. Ct. 1653, 32 L. Ed. 2d 212, for an excellent review of these cases, and of the whole history of immunity statutes.

[32] Kastigar v. United States, supra, footnote 31, at page 445.

[33] Ullmann v. United States (1956), 350 U. S. 422, 438, 76 Sup. Ct. 497, 100 L. Ed. 511, 53 A. L. R. 2d 1008.

[34] Elam v. State, supra, footnote 24, at page 392; Hebel v. State, supra, footnote 25, at page 331.

of the prosecutor is to seek justice, not merely to convict."[35] When the prosecutor is considering whether or not to make a motion for immunity, he should bear in mind this predominant objective of impartial justice, and not merely whether the evidence will be favorable to the prosecution. He should not hesitate to move for immunity solely on the ground that the testimony thus elicited might exonerate the defendant.

*By the Court.*—Order reversed insofar as convictions for obstructing an officer and burglary are concerned; cause remanded for a new trial on these two charges.

[35] ABA *Standards Relating to The Prosecution Function and The Defense Function,* p. 25, sec. 1.1 (c) (approved draft, 1971).