(December 21, 1978)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK GONZALES, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered March 16, 1977, convicting him of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree and seventh degree (two counts) and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. Judgment modified, on the law and the facts, by reversing the convictions of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree, and the sentences imposed thereon, and the said counts are dismissed. As so modified, judgment affirmed. The issues presented in this case are whether the defendant acted as an agent of the buyer throughout his dealings with the undercover officers and whether the defendant can be convicted for the sale of a controlled substance when the substance involved in the transaction was lidocaine. We hold that the defendant was not proved guilty of criminal possession of a controlled substance in the first degree and criminal sale of a controlled substance in the first degree beyond a reasonable doubt, and that the sale conviction involving lidocaine cannot stand. The factors which a jury must consider in resolving the agency question are numerous. Recent decisions of the Court of Appeals have established the following elements which must be considered in determining whether a defendant is an agent of the buyer (cf. *People v Roche,* 45 NY2d 78; *People v Lam Lek Chong,* 45 NY2d 64; *People v Argibay,* 45 NY2d 45): (1) did the defendant act as a mere extension of the buyer throughout the relationship, with no independent desire to promote the transaction; (2) was the purchase suggested by the buyer; (3) did the defendant have any previous acquaintance with the seller; (4) did the defendant exhibit any salesmanlike behavior; (5) did the defendant use his own funds; (6) did the defendant procure from many sources for a single buyer; (7) did the buyer pay the seller directly; (8) did the defendant stand to profit; and (9) was any reward promised in advance. In applying these elements to the evidence presented in this case, the entire course of the dealings between the defendant and the officers is relevant. Here, the relationship was initiated by the officers, posing as organized crime figures, in a bar in the defendant's neighborhood. They brought up the subject of buying drugs. They repeatedly pressed the defendant to obtain cocaine, notwithstanding his numerous failures to call them as promised. No proof was presented to show that the defendant had

engaged in drug dealing prior to his introduction to the police. The defendant was obviously unfamiliar with the drug scene. Months went by before he was able to produce even the first "taste". At that meeting it took the defendant two hours, and several trips out of the bar, to actually deliver the cocaine to the undercover officer. That officer had to instruct him in the manner in which to conceal the drugs. Another officer, in later talks with the defendant, had to inform him of the relationship between the number of cuts, the quality of the drug and the price. It cannot be said that the defendant exhibited an independent desire to promote any transactions when the initial request for aid in purchasing drugs came in the early part of 1974 and the first significant sale occurred in September of that year. Moreover, this sale did not occur until after the defendant had been threatened by the undercover officers. As to the defendant's previous acquaintance with sellers, it is significant that the defendant promised to arrange many meetings with many different sellers, and that none of them took place until a friend of the defendant made some attempts to contact a dealer. The defendant was a mere extension of the undercover police. He was not even necessary to carry out their purposes. Once the undercover officers had been introduced to the dealer, they negotiated directly for each sale. The defendant merely served to communicate offers and counteroffers or make arrangements for meetings, because the dealer would not discuss purchases on the telephone. Most of these communications were at the express direction of the police. In the sales for which the defendant was charged, money and drug transfers were made directly between the dealer and the officers. In addition, the officers discussed sales without the defendant's aid after the initial introduction. The last element that must be considered is whether the defendant profited from the transactions. No testimony was given which would indicate that prior to any of the transactions, the officers promised the defendant any reward. There were only two transactions in which the defendant received, or was to receive, any money for his assistance. In both, the officer began the discussion of the defendant's compensation. As to the September 3, 1974 sale, the discussion did not occur until after the transfer of drugs and money was complete. As to the October 29, 1974 sale, the discussion did not occur until after the sample drug was tested and approved. In addition, this discussion was recorded and the officer humiliated the defendant by stating, "I can pick any figure, I can pick $1.12, you know that's my figure," and thereafter ordered defendant to drop his figure. Under these circumstances, it can hardly be said that the agency defense falls because the defendant received some compensation. We find that the defendant was an agent of the purchasing undercover officers throughout their association. Thus, the conviction of criminal possession of a controlled substance in the first degree, based upon the September 3, 1974 transaction, must fall since the defendant never had constructive or actual possession of the cocaine. The conviction of criminal sale of a controlled substance based upon the October 29, 1974 transaction, must also fall, not only because the defendant acted as the buyer's agent, but also because the matter sold was lidocaine (see *People v Giarratano,* 62 AD2d 1042). To support a conviction of criminal sale of a controlled substance in the first degree, section 220.43 of the Penal Law requires the knowing sale of a substance "containing a narcotic drug". This requirement is not overcome by defining "to sell" as "to offer or agree to sell" *(People v Rosenthal,* 91 Misc 2d 750; *People v Boscia,* 83 Misc 2d 501; *People v Lawson,* 84 Misc 2d 24).* Since lidocaine is not a controlled substance, the sale conviction must be reversed. Having disposed of the sale conviction on a finding that there was

an agency and because lidocaine does not satisfy the statutory requirements, it is not necessary to determine the merits of the People's contention that this conviction be reduced to one of attempted sale. In order to charge attempted sale, for which legal and factual impossibility is no defense, the People must provide affirmative evidence indicating that a defendant intended to sell cocaine but mistakenly sold lidocaine. Here, the record contains no such evidence. What evidence there is would, at best, constitute an attempted larceny. Damiani, J. P., Suozzi, Rabin and Hawkins, JJ., concur.