■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLARENCE OLIVER, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Beldock, J.), rendered May 5, 1981, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. The evidence adduced at trial raised a substantial issue as to "whether the defendant had acted as an agent of the buyer, the undercover police officer, and, therefore was not guilty of the crime of selling a narcotic drug for which he was convicted (*People v Roche,* 45 NY2d 78)" (*People v Nunez,* 67 AD2d 612). While defense counsel neither requested that an agency defense be charged nor objected to the court's failure to do so, under the facts at bar we consider it appropriate that we exercise our discretionary power to act in the interest of justice (see CPL 470.15, subd 3, par [c]; subd 6, par [a]; *People v Nunez, supra*). This court recently set forth the factors to be considered in determining whether a defendant is an agent of a buyer: "(1) did the defendant act as a mere extension of the buyer throughout the relationship, with no independent desire to promote the transaction; (2) was the purchase suggested by the buyer; (3) did the defendant have any previous acquaintance with the seller; (4) did the defendant exhibit any salesmanlike behavior; (5) did the defendant use his own funds; (6) did the defendant procure from many sources for a single buyer; (7) did the buyer pay the seller directly; (8) did the defendant stand to profit; and (9) was any reward promised in advance (*People v Gonzales,* 66 AD2d 828)" (*People v Bethea,* 73 AD2d 920, 921). In applying these considerations to the evidence presented in this case it becomes apparent that a reasonable view of the evidence would support the conclusion that defendant was acting as the agent of the buyer, the undercover police officer (see *People v Roche,* 45 NY2d 78, 86). The sale in question occurred in an after-hours club which was managed by defendant. According to defendant, who was the sole witness in his own behalf, he was in his office in the basement of the club when the undercover officer approached him. Although he had met the officer on other occasions, that was the first time he had seen him on that evening. The officer inquired about purchasing some "stuff", which defendant assumed meant drugs. Two other men, Oscar and Johnny, were also present at that time. Defendant testified that before he had a chance to respond to the officer's inquiry, Oscar, who apparently had overheard the officer's remarks, stated, "I have something good". The officer then approached Oscar and defendant walked away. According to the People's version, defendant approached the officer upstairs in the club itself and, after some heated conversation, instructed the officer to follow him down to the basement. In the

basement, defendant introduced the officer to Oscar and Johnny and told him that Oscar had some good stuff. After discussing the purchase of drugs with Oscar, the officer took defendant outside the room. Since he had never met Oscar before, he asked defendant how well he knew him. Defendant said he knew Oscar well and vouched for the quality of his "stuff". The officer then returned to the room and handed Oscar $175 in exchange for a plastic bag of white powder which was later determined to be cocaine. After a brief discussion with defendant, the officer went upstairs and left the club. No evidence was presented which would suggest that defendant either stood to profit from the sale or that a reward was promised in advance. In considering all of the facts and circumstances here present, and in applying the factors set forth in *People v Bethea* (73 AD2d 920, *supra*), it becomes apparent that a reasonable view of the evidence is supportive of the contention that the "defendant acted as a mere instrumentality of the buyer" (*People v Roche*, 45 NY2d 78, 86, *supra*). It was thus error for the court to fail to charge the defense of agency. A determination of the existence of an agency relationship should have been submitted to the jury, with appropriate instructions (*People v Argibay,* 45 NY2d 45, 53; *People v Roche, supra,* p 86). Inasmuch as proof of defendant's guilt was not overwhelming, this error cannot be considered harmless and reversal is required (see *People v Crimmins,* 36 NY2d 230, 241). Furthermore, we note that the prosecution repeatedly sought or elicited testimony about uncharged drug sales allegedly involving defendant that occurred both before and after the drug sale at issue. It also asked questions concerning illegal activities occurring at the night club that defendant managed and with respect to defendant's purported familiarity with drugs. The court sustained objections to these questions and answers and directed the jury to disregard anything not admitted into evidence and to draw no inferences therefrom. Nevertheless, the effect of these comments on the jury was highly prejudicial. We have examined the remainder of defendant's contentions and find them to be without merit. Bracken, J. P., Brown and Niehoff, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment of conviction, with the following memorandum: I disagree with the majority's assessment of the severity of the enumerated errors on the grounds that defendant's guilt was proven beyond a reasonable doubt and a verdict finding him guilty of the crime of criminal sale of a controlled substance in the third degree was properly rendered after a fair trial. The testimony elicited from the People's witnesses during the course of the trial revealed that defendant approached undercover officer Raul Mercado in an after-hours club and rendered an apology to the officer with respect to a heated argument which the two of them had had. In an apparent effort to atone for a past misdeed, defendant proposed that Mercado accompany him to the basement of the club where he promised to "make it up" to the officer. In the basement, defendant introduced Mercado to a person named Oscar and made the statement that "Oscar had some good stuff". Oscar and Mercado then conversed after which Mercado, in an aside to defendant, inquired as to Oscar's reliability. Defendant attested to the quality of the substance and implicitly vouched for Oscar's character in an apparent attempt to persuade Mercado to make a purchase. Based upon defendant's representations, the deal with Oscar was consummated and defendant accompanied Mercado back upstairs. From the record, it appears that defendant displayed a thorough knowledge of street trafficking in drugs. Significantly, it was defendant who took the initiative and made the sale possible. Defendant's over-all manner and actions and the totality of circumstances indicate that what was involved here was "a well-choreographed, two-person drug operation, conducted by two street-wise entrepreneurs" (*People v Windley,* 78 AD2d 55, 58). Defendant, however, disputes the People's version of what transpired and

maintains that the trial court erred in failing to submit the defense of agency to the jury. Inasmuch as defendant's trial counsel neither submitted an agency defense in the form of a request to charge nor objected to the court's failure to so charge, the issue would not be subject to appellate review were the majority not inclined to reach it in the interest of justice. I take issue with both the decision to address the issue and with their determination thereof. In order to label defendant an agent of his purchaser, the following circumstances must pertain: "a narcotics merchant must be a mere extension of the buyer. He may act to procure what the buyer wants because the buyer has asked him to do so, but not out of any independent desire or inclination to promote the transaction" (*People v Argibay,* 45 NY2d 45, 53-54, mot for lv to rearg den 45 NY2d 839, cert den 439 US 930). A reasonable view of the evidence adduced at trial is simply not reconcilable with defendant's contention that he acted merely as an agent of the police officer. Hence, no charge on agency was either necessary or appropriate as to him. The mere fact that the jurors, as the legitimate triers of fact, chose to accord credibility to the People's witnesses as opposed to defendant does not constitute a basis for reversal. I decline to now interfere with their function. As respects the allegations of prosecutorial misconduct, it bears noting that all objections to instances of improper cross-examination were sustained by the trial court. During the course of its charge, the court reiterated its directive that the jury was to totally disregard testimony which had been stricken from the record. Defendant neither sought further clarification nor requested rectification of the curative instructions rendered as to any of these elements. Moreover, the defense never requested a mistrial on the ground that the right to a fair trial had been jeopardized by the prosecutor's conduct. Clearly, defendant's claims have not been preserved for review as a matter of law (CPL 470.05, subd 2; *People v Galloway,* 54 NY2d 396, 400; *People v Santiago,* 52 NY2d 865, 866). Had the issue been preserved for our review, I would conclude that the trial court's efforts vitiated the taint of prejudice to defendant and sufficed to extinguish the possibility that the prosecutor's conduct had interfered with the jurors' capacity to render an impartial verdict (see *People v Safian,* 46 NY2d 181, mot for lv to rearg den 46 NY2d 940, cert den 443 US 912). Moreover, reversing a judgment on the basis of prosecutorial misconduct is an "ill-suited remedy" inasmuch as it "does not affect the prosecutor directly, but rather imposes upon society the cost of retrying an individual who was fairly convicted" (*United States v Modica,* 663 F2d 1173, 1184, cert den 456 US 989). In my view, defendant's remaining contentions are without basis and merit no further consideration.