STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney J. COOPER, Defendant-Appellant. †

Court of Appeals

*No. 84–2201–CR. Submitted on briefs August 12, 1985.—Decided November 21, 1985.*
(Also reported in 380 N.W.2d 383.)

---

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Steven D. Phillips,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J. Rodney J. Cooper appeals from a judgment convicting him of attempted delivery of a controlled substance, cocaine, secs. 939.32(1), 939.05(1), 161.16(2)(b), 161.41(1)(b), Stats. The substance delivered was actually lidocaine, a noncontrolled substance. Cooper argues that nothing supports the inference that he believed the substance was cocaine, and therefore the evidence is insufficient to support his conviction. We affirm.

A guilty verdict will be overturned only when the evidence, considered in a light most favorable to the state, is so insufficient that no jury acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt. *State v. Koller,* 87

Wis.2d 253, 266, 274 N.W.2d 651, 658 (1979). The verdict will be affirmed if any possibility exists that the jury could have drawn the appropriate inferences from the evidence to find the requisite guilt. *State v. Alles,* 106 Wis.2d 368, 377, 316 N.W.2d 378, 382 (1982).

The crime of attempt has two elements: a criminal intent and some acts in furtherance of the intent.[1] *Berry v. State,* 90 Wis.2d 316, 326, 280 N.W.2d 204, 209 (1979), *cert. denied,* 444 U.S. 1020 (1980). It is primarily the accused's acts which provide evidence of the criminal intent. *Hamiel v. State,* 92 Wis.2d 656, 663, 285 N.W.2d 639, 644 (1979). Those acts must be so few or of such an equivocal nature as to render doubtful the existence of the requisite criminal intent. *Berry,* 90 Wis.2d at 327, 280 N.W.2d at 209. With these principles in mind, we turn to the evidence.

Ziebell, a narcotics investigator, testified that he and Don Salser contacted Cooper to buy marijuana or cocaine. Ziebell told Cooper he wanted to buy an eighth of an ounce of cocaine. Cooper said he had some good suppliers and could get all the cocaine Ziebell wanted. Cooper took a folded paper containing a white powder from his pocket and handed it to Ziebell, who tasted it. The powder smelled and numbed Ziebell's gums and tongue like cocaine. Cooper said he got the same reaction. When Ziebell offered Cooper $40 for the envelope, Cooper insisted on $45. After Ziebell agreed to pay $45, Cooper left, returned about ten minutes later, and said he wanted to complete the delivery without being involved. Cooper said he did

---

[1] Section 939.32(3), Stats., provides:

> An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does act toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

not trust Ziebell and would deal only through Salser. Ziebell gave the money to Salser.

Salser testified that Cooper said he preferred to sell cocaine to Salser because he didn't trust Ziebell. Cooper discussed the price with Salser and indicated that the transaction would be made by a third party without Cooper involving himself. Salser went to Cooper's car, in which the third party was seated. Salser took an envelope of white powder from a tape case on the console and left the $45 on the console. After tasting its contents and believing it was cocaine, he took the envelope to Ziebell.

The white powder was lidocaine, a noncontrolled substance similar to cocaine in appearance, taste and effect to the tongue and fingers.

Cooper asserts that his acts and statements, even when viewed most favorable to the state, do not unequivocally demonstrate that he intended to deliver cocaine. He asserts the facts are equally consistent with an intent to defraud Ziebell. To support his contention, Cooper relies on three cases.

The first case, *United States v. Oviedo*, 525 F.2d 881 (5th Cir. 1976), reversed a guilty verdict for attempted distribution of heroin. Defendant had actually distributed an uncontrolled substance. The court of appeals rejected his argument that the evidence was insufficient to establish that he thought the substance was heroin. He had told the purchaser that the substance he was selling was heroin, and a quantity of the substance was found concealed in his television set. The court of appeals held, however, that because the substance was not heroin, defendant's conduct was "ambivalent," and refused to allow a jury's determination of the defendant's intent "to form the sole basis of a criminal offense." *Id.* at 885–86.

*United States v. Quijada*, 588 F.2d 1253 (9th Cir. 1978), rejected the result in *Oviedo* with no discussion. In *Quijada*, defendant and purchaser negotiated for the sale

and delivery of "snow." They met three times and spoke once on the telephone. The defendant indicated several times that he had the "stuff" and repeated the assertion to an undercover agent. At the sale, the agent performed a field test on the substance which indicated that it was cocaine. In fact it was lidocaine. The *Quijada* court said, "[p]roof of what a defendant supposed the facts to be, of course, must be established beyond a reasonable doubt; but that clearly was accomplished in this case." *Id.* at 1255.

We reject the result in *Oviedo.* The objective facts before us consist of negotiation to sell cocaine, an agreement to sell cocaine, complicated maneuvers, and transfer and delivery by intermediaries of a substance having properties similar to those of cocaine. These are sufficient objective facts to demonstrate unequivocally that Cooper intended to deliver cocaine.

Cooper also relies on *United States v. Murray,* 527 F.2d 401 (5th Cir. 1976), in which the court of appeals reversed a conviction for conspiracy to distribute heroin, which turned out to be lactose. The court of appeals said that the evidence showed the actions of a person involved in a "ripoff" rather than a true conspiracy. *Id.* at 409. *Murray* is not in point. There some evidence tended to show that the defendant knew that someone had substituted the lactose. Here no such evidence exists. The third case Cooper relies on is *People v. Gonzales,* 411 N.Y.S.2d 632 (1978). Gonzales sold lidocaine, claiming it was cocaine, and was convicted of the sale of a controlled substance. Because lidocaine is not a controlled substance, the court reversed the conviction. *Id.* at 634. *Gonzales* is not in point.

*By the Court.*—Judgment affirmed.

433

DYKMAN, J. *(dissenting)*. Defendant was tried for attempted delivery of cocaine. Section 939.32(3), Stats., defines attempt:

> An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

Because defendant was charged with attempted sale of cocaine, the jury must have been able to draw an inference that defendant believed the substance he was delivering was cocaine. The "extraneous factor" that prevented the complete crime is the fact that the substance transferred was lidocaine.

The majority sets out the objective facts this case: "[N]egotiation to sell cocaine, an agreement to sell cocaine, complicated maneuvers, and transfer and delivery by intermediaries of a substance having properties similar to those of cocaine." It concludes, without explanation, that these facts demonstrate unequivocally that defendant intended to deliver cocaine.

"Unequivocal" means "leaving no doubt: CLEAR, UN-AMBIGUOUS." *Webster's New Collegiate Dictionary* 1277 (8th ed. 1977). What fact or facts suggest that defendant knew he was delivering cocaine? He said he wanted to sell cocaine, he agreed to sell cocaine, he acted like he was selling an illegal substance, and the substance he sold looked like cocaine. None of these facts are direct evidence that defendant believed the substance to be cocaine. The facts are circumstantial evidence from which an inference can be drawn that defendant believed he was selling cocaine. Circumstantial evidence is "[T]he proof of certain facts from which a jury may logically infer the ex-

434

istence of other facts according to the knowledge or common experience of mankind." Wis. J I—Criminal 170.

Because the evidence of defendant's belief as to the authenticity of the cocaine is circumstantial, we use a special test for evidence sufficiency. "A conviction may be based upon circumstantial evidence, however when circumstantial evidence is relied upon, as here, a conviction should be upheld if the evidence is strong enough to exclude to a moral certainty every reasonable hypothesis of innocence." *State v. Stanfield,* 105 Wis.2d 553, 564, 314 N.W.2d 339, 344 (1982). This rule refers to evidence the jury could have believed and relied upon. *Peters v. State,* 70 Wis.2d 22, 34, n.14, 233 N.W.2d 420, 427 (1975). Thus, we exclude evidence the jury could not have relied upon— i.e. unreasonable evidence—and examine the remaining evidence to determine whether a reasonable hypothesis of innocence exists. This is an appellate test. *Id.*

A reasonable hypothesis of innocence of this crime is that defendant was trying to cheat, "rip-off" or "burn" Ziebell by selling him an inexpensive substance represented to be cocaine, thus increasing defendant's profit margin. I conclude that this hypothesis is reasonable in the sense that it is plausible. We read newspaper accounts of this type of transaction—and the sometimes dire consequences for the cheater. Television reports this type of fraud both in its news and entertainment functions. The legislature has recognized that persons might try to pass off other substances as controlled substances. Sec. 161.41(4)(a)1, Stats., provides: "No person may knowingly deliver, attempt to deliver or cause to be delivered a noncontrolled substance and expressly or impliedly represent to the recipient: 1. The substance is a controlled substance; . . . ."

I also conclude that the only evidence presented is consistent with defendant's innocence of attempted delivery of cocaine. Defendant did not testify. There is no evi-

dence to reject as unreasonable without also destroying the state's case. I see no reason why negotiating to sell cocaine is inconsistent with defendant's belief that the drug was lidocaine. No one would expect a rip-off artist to lead off with negotiations to sell powdered sugar or lidocaine. Similarly, if the object is to cheat the buyer, the seller would not agree to sell the phony item. Finally, complicated maneuvers and transfers by intermediaries is consistent with defendant's knowledge that he was selling lidocaine. Fraud involves an attempt to cheat in some way. The closer the counterfeit is to the real thing, the less the chance of discovery. The more closely the transaction mimics the real thing, the less suspicion is aroused. One would not expect defendant to have suggested an open and obvious transfer of the substance.

I cannot conclude that the evidence excludes, to a moral certainty, every reasonable hypothesis of innocence. I do not believe the majority can reach that conclusion either, because it does not explain how it reaches its conclusion, but only that the facts clearly show that defendant intended to deliver cocaine. Calling a matter "clear" does not make it so.

Adoption of my theory of this case does not hamper prosecution of drug frauds. Section 161.41(4)(a), Stats., criminalizes the very transaction defendant suggests occurred. Under the majority's theory, that statute is surplusage, for every transfer of a noncontrolled substance coupled with a representation that the substance was controlled would be an attempted sale of a controlled substance. Statutes should be construed so as to avoid the conclusion that the legislature passed a meaningless law. *State v. Wisconsin Telephone Co.,* 91 Wis.2d 702, 714, 284 N.W.2d 41, 46 (1979). I would reverse and permit defendant to be prosecuted under the proper statute.