OPINION OF THE COURT

Per Curiam.

Defendants Anthony Argibay and Anthony Di Guiseppe appeal from affirmances by the Appellate Division, one Justice dissenting, of their convictions after jury trial of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41).
The principal issue on Argibay’s appeal is whether, in a case involving sale of narcotics, the jury must be charged on agency when the evidence demonstrates that defendant’s involvement in the transaction was, at least, that of a middleman or broker. As to Di Guiseppe, who received an agency charge, the issue tendered is whether the charge was correct in precluding the agency defense where defendant received any financial gain in the transaction; that issue is obviated by a failure to object to the charge at trial. Another issue, common to both appeals, is whether the trial court erred in failing to declare a mistrial after learning that a juror had, during the trial, said to counsel for Argibay "I hate you”. The court had offered to conduct a voir dire examination of the juror, an offer declined by defense counsel.
The orders of the Appellate Division should be affirmed. No charge on agency is required, or appropriate, when the testimony essential to the verdict in favor of the People leads to the inevitable conclusion that defendant was not merely accommodating the buyer, but was acting, if not as a principal seller, then at the very least as a middleman or a broker for his supplier. Hence, the court properly declined an agency charge as to Argibay. As to Di Guiseppe, the agency charge was erroneous, but the error was not preserved by objection at trial. While failure to take action on defense counsel’s report of juror misconduct would have been error, defendants were not entitled, automatically, to a mistrial. The trial court acted appropriately in offering to conduct a voir *51 dire examination, and defense counsel’s refusal of the offer worked a waiver of any error.
Several other issues, raised and briefed by the defendants, have been considered and rejected.
The drug transaction in this case was initiated, according to police testimony, by a telephone call from Joseph Di Guiseppe, brother of appellant Anthony Di Guiseppe, to undercover Officer Sievers, on June 6, 1975. Preparations were made for a purchase of one ounce of cocaine that day. Sievers and undercover Officer Siebert were introduced to Anthony Di Guiseppe, and the officers were taken to the home of the "connection”. The transaction was aborted, however, with the officers waiting in their automobile in front of the connection’s home until 1:00 a.m., never having met the connection or entered his apartment. Joseph Di Guiseppe had driven away from the scene, and Anthony Di Guiseppe had not emerged from the connection’s building by the time the agents decided to leave.
After two telephone calls exploring the "foul up” of June 6, Joseph Di Guiseppe agreed to call Sievers when a new transaction had been arranged. On June 13, a week after the aborted "buy”, Joseph Di Guiseppe called Officer Siebert and made new arrangements. Siebert and Sievers again met the Di Guiseppe brothers, and were taken to the same location. After ascertaining that Sievers had money for the cocaine, defendant Anthony Di Guiseppe accompanied him to defendant Argibay’s apartment, where the transaction was to take place. Argibay’s supplier was to deliver cocaine soon and Sievers and defendant Di Guiseppe were instructed to wait in the kitchen when he arrived, so they would not see him. The delivery was made, the cocaine was tested and weighed, and after a slight dispute over the weight, Sievers paid Argibay $1,700 and received just less than an ounce of cocaine. Sievers gave Di Guiseppe a grain "off the top”, and then saw money change hands from Argibay to Di Guiseppe. When Sievers asked how he could reach Argibay to purchase more cocaine, he was instructed to deal through Anthony Di Guiseppe.
A week and a half later, Sievers called Anthony Di Guiseppe about an additional purchase, but was told that Argibay was not then interested in selling any drugs. Di Guiseppe offered to get back to Sievers about obtaining cocaine from another source. Time passed without any return call from Di Guiseppe, and Sievers went to Argibay directly to try to make a purchase. Argibay indicated that he was not making enough *52 money to warrant his continued involvement in the narcotics trade, and declined to sell any more cocaine.
Argibay and the Di Guiseppe brothers were arrested and arraigned in September 1975. Joseph Di Guiseppe pleaded guilty and was accorded youthful offender treatment. Argibay and Anthony Di Guiseppe went to trial, at which the police testimony detailed the narcotics transaction. Argibay, an architecture student at Pratt Institute, called two. character witnesses. Di Guiseppe called no witnesses. Neither defendant testified.
On the last day of trial before summations and the charge to the jury, Argibay’s trial counsel informed the court that, as the jurors had filed out of the jury room at the end of the day, one of the jurors had stopped in front of him and said "I hate you.” Counsel for Di Guiseppe reported that he, too, had heard the rexriark. A motion was made for a mistrial or, in the alternative, for replacement of the juror by an alternate. When the motion was denied, an application was made for the court to examine the juror the next morning as to any bias that "would prevent her from rendering a fair verdict”. Although the application had been initially denied, the court had reconsidered by the next morning, and offered to question the juror. Counsel for Argibay, however, had changed his mind, and requested the court not to conduct an examination of the juror, even after the court had indicated the juror would not be disqualified unless she was first questioned. Hence, no further inquiry was conducted.
The jury was charged that if they found defendant Di Guiseppe to be solely an agent of the buyer, they should find him not guilty of the sale of the drugs. In explaining the agency charge, however, the court said "If he received or is promised any advantage, benefit or compensation for his part, he is not an agent.” No objection was taken to this charge. As to defendant Argibay, despite a request, no agency charge was given. Each defendant was convicted and sentenced to a term of from six years to life imprisonment. The Appellate Division affirmed, one Justice dissenting.
Extended discussion of the juror misconduct issue is not warranted. Had the trial court refused to investigate the juror’s remark to defense counsel, reversal might be mandated. But investigation was offered and it was defense counsel, after requesting a voir dire examination only the night before, who declined the next morning to have the examina *53 tion conducted. The trial court could not be faulted for refusing to disqualify the disputed juror without conducting any inquiry into the meaning of and the circumstances surrounding the objectionable statement. Hence, when inquiry was declined, defendants waived any rights they might otherwise have had on appeal.
The agency charge submitted to the jury as to Di Guiseppe was arguably error. Since no objection was taken to the charge, however, the error is not preserved.
Preserved for review, and meriting more complete treatment, is the contention that defendant Argibay was entitled to a charge on agency. To sustain such an argument, there must be some view of the evidence on which Argibay may be said to have acted only as an agent for the buyer.
It is argued, with superficial plausibility, that since Argibay was not the ultimate supplier, he might have been acting as an agent of the buyers, the undercover officers. Indeed, Argibay’s supplier arrived with a delivery while Sievers was in Argibay’s apartment. The mere fact that Argibay was a middleman or a broker, however, is not enough to warrant a charge on agency. Were there such a rule, even the largest of drug sellers would be entitled to an agency charge, since so many narcotics originate, ultimately, abroad.
All agents aré, concededly, middlemen of sorts. But the converse is not true. A middleman who. acts as a broker between a seller and buyer, aiming to satisfy both, but largely for his own benefit, cannot properly be termed an agent of either. Such a middleman is a trader in narcotics, a merchant. He may not be concerned with the particular needs of an individual drug purchaser except to the extent that satisfying those needs affects his illicit business. To call him an agent strains beyond recognition the agency concept.
In the commercial law field, of course, an agent owes a high duty of loyalty to his principal (see Restatement, Agency 2d, §§ 387-398). While it would be ludicrous to apply commercial law definitions to the criminal law, the familiar principles are not without limited relevance. The typical intermediary in a narcotics transaction, perhaps especially because of the implications of the transaction’s illegality, is not likely to have any strong bond of loyalty to his buyer.
To be an agent of his buyer, a narcotics merchant must be a mere extension of the buyer. He may act to procure what *54 the buyer wants because the buyer has asked him to do so, but not out of any independent desire or inclination to promote the transaction. The applicable standards are developed in greater detail elsewhere (People v Lam Lek Chong, 45 NY2d 64, 72-76; this case offers, nevertheless, a useful illustration.
None of the testimony at trial supports the inference that defendant Argibay was merely an agent of the police officers. Until the narcotics were actually delivered and paid for, the officers had never met their purported "agent”. Argibay, in fact, had used the Di Guiseppes as intermediaries to shield him from all contact with his "principal” until the transaction was to be completed. When "agent” and "principal” did finally meet, the "agent” would not allow the police officer, his "principal”, to see the supplier, and a dispute over quantity arose between Argibay and the officer. Finally, on a later occasion, Argibay admitted to Sievers that he was leaving the narcotics trade because it had ceased to be financially profitable.
 This testimony, uncontroverted as it is by proof or cross-examination, is not reconcilable with the theory that Argibay was acting only as an extension of his buyer. The argument that the undercover officer might have lied about Argibay’s involvement, and that Argibay _ may have done nothing more than offer his apartment to facilitate the deal between undercover Officer Sievers and the ultimate supplier, is not supported by any evidence. It is not even credible speculation or hypothesis. If the testimony of Officer Sievers is to be believed at all, and the finder of fact, the jury, evidently believed it, Argibay was a seller of narcotics, and by no inferential process an agent. Hence, no charge to the jury on agency was necessary or appropriate. For identical reasons, no charge on facilitation was required.
Anthony Di Guiseppe presents a useful counterpoint. Di Guiseppe became involved in the transaction when his brother received a telephone call from an undercover officer. The undercover officers were in frequent contact with Di Guiseppe, who eventually brought them to Argibay’s apartment. Yet the undercover officer paid Argibay for the drugs directly, rather than dealing through Di Guiseppe, although Di Guiseppe’s involvement did include compensation by, at least, a small quantity of cocaine. Finally, Di Guiseppe was apparently willing to act as a procurer of drugs from sources other than *55 Argibay, indicating, perhaps, more loyalty to the prospective buyer, his supposed "principal”, than to any single supplier. While even this testimony does not establish that Di Guiseppe was an agent, it does not appear to be inconsistent with agency, and a jury charge on agency was probably indicated. Only the failure to object to the erroneous charge prevents review in this court.
In sum, an agency charge is not required simply because it appears that a seller of narcotics did not personally grow, import, or manufacture the illicit substance. If it were, an agency charge would be mandated as a matter of course when sale of narcotics is alleged. Instead, the agency charge should be reserved for cases where there is at least some evidence, however slight, to support the inference that the supposed agent was acting, in effect, as an extension of the buyer.
Accordingly, the orders of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jones, Wachtler, Fuchs-berg and Cooke concur in Per Curiam opinion; Judges Jasen and Gabrielli concur in the opinion except insofar as it justifies the concept of the agency defense (see dissenting opn by Gabrielli, J., in People v Roche, 45 NY2d 78, decided herewith).
Orders affirmed.