Gabrielli, J.
(dissenting in part). I respectfully dissent from so much of the court’s holding as affirms that part of the order appealed from which reversed defendant’s conviction for criminal sale of a controlled substance in the first degree.
My primary objection to the majority’s decision stems from my conclusion that this court ought not to recognize the existence of any "agency defense” to a charge of sale of a controlled substance. The "agency defense” in such a case is an unwarranted, unnecessary, and essentially unworkable *88 judicial modification of that classification of criminal conduct enacted by the Legislature and embodied in the Penal Law. Moreover, even were I to concede the validity of an "agency defense” in certain situations, I would not deem it applicable to a case such as this, which involves the sale of a quantity of illicit drugs so large as to warrant the presumption that the purchaser was buying not for personal use, but for resale.
Initially, I note that the doctrine of stare decisis does not serve to bar consideration by this court of the existence of an "agency defense”, for we have not previously seized upon the opportunity to discuss the soundness of a doctrine which has crept into our law without that careful analysis appropriate to so significant a topic. The "theory” underlying the "agency defense” in New York State, such as it is, has been developed and applied in drug cases by the various Appellate Divisions rather than by this court. Even those courts, moreover, seem to have simply accepted at face value a doctrine which was initially developed in another day to deal with the somewhat different problems created by passage of the Eighteenth Amendment (see People v Buster, 286 App Div 1141); a doctrine, moreover, which has since been repudiated by the very Federal system which fostered it (compare United States v Sawyer, 210 F2d 169, with United States v Pruitt, 487 F2d 1241).
While decisions of the Appellate Divisions are, of course, of considerable persuasive authority, they are certainly not binding upon this court. Examination of those so-called "agency defense” cases which did reach this court, however, reveals for the most part a series of affirmances without opinion of Appellate Division determinations which discussed the agency defense concept (People v Lindsey, 12 NY2d 958; People v Wright, 15 NY2d 555; People v Bray, 15 NY2d 637; People v Harris, 24 NY2d 810; People v Sheldon K., 26 NY2d 949). It is of some interest to note that in the vast majority of cases before this court the "agency defense” was unavailing (compare People v Wright, supra; People v Bray, supra; People v Harris, supra; People v Hingerton, 26 NY2d 790, with People v Lindsey, supra; People v Hollins, 19 NY2d 864). At any rate, it is beyond cavil that an affirmance without opinion indicates merely that the result reached in a particular case is correct, and does not serve to place the imprimatur of this court upon the particular theory espoused by the court below. Such an affirmance is thus of little, if any, precedential value.
*89 Perhaps the one case decided by this court which prevents me from declaring outright that we have in fact never indicated any approval of the "agency defense” prior to today is People v Carr (41 NY2d 847, revg 49 AD2d 656). There, the Appellate Division had sustained the refusal of the trial court to charge possession of a controlled substance as a lesser included offense to a charged sale of that substance. Mr. Justice Louis M. Greenblott dissented, contending that the jury could have found the defendant to be an agent of the buyer, and could thus have convicted him of possession and yet not of sale. We reversed on that dissenting memorandum. Although it cannot be denied that by our adoption of that memorandum we necessarily indicated some acceptance of the "agency defense” concept, I do not believe that so slender a reed should foreclose reconsideration of the doctrine at this time, especially since the validity of the "agency defense” theory was not challenged in that case. Accordingly, I conclude that my objections to the "agency defense” do not run afoul of the doctrine of stare decisis.
Turning then to the question of the validity of the "agency defense”, I cannot agree that that concept is implicit in the statutory classification of drug-related offenses, as the majority of this court concludes in both this case and its companion, People v Lam Lek Chong (45 NY2d 64, decided herewith). The majority purports to find legislative sanction for the "agency defense” in the admitted and hardly enigmatic fact that the Legislature has chosen to impose more stringent punishment upon the seller of drugs than upon the possessor of drugs. The court would draw from this classification the conclusion that the Legislature could not have wished to treat more severely than the actual buyer someone who can be denominated under some arcane mixture of agency and penal concepts an agent of the buyer. Admittedly this statement, so baldly put, has a certain appeal to one’s innate sense of justice. More careful consideration of the legislative scheme for controlling the illicit drug trade in New York, however, must lead to its rejection for several reasons even more compelling than the truism that had the Legislature wished to so modify its apparently all-inclusive classification system it could undoubtedly have found some less cryptic means of expressing that intent. I find the majority’s extrapolation a rather tenuous foundation upon which to exempt a person *90 who engages in a forbidden transaction from criminal liability based on his participation in that transaction.
My disagreement with the majority is founded in large part upon an essential difference in interpretation of the legislative intendment. It is, of course, undisputed that the statutory classification of drug-related offenses may be broken down into two largely discrete categories, possession and sale, and that by and large those who are guilty of selling drugs are treated more harshly than those who are guilty only of their possession. The majority would view this system as turning upon a distinction between buyers and sellers, and would conclude that the Legislature did not intend to impose harsher sanctions upon an agent of the buyer than it did upon the buyer himself. I cannot agree with this dichotomy; rather, I suggest that the distinction intended to be drawn by the Legislature was between those individuals who contribute in some way to the distribution of illicit drugs, on the one hand, and the ultimate users of those drugs on the other. Thus, I believe that the Legislature is distinguishing not seller from buyer, but rather seller-distributor from user.
The Legislature has determined that the use and distribution of drugs constitutes a grave social danger and a basic threat to the very fabric of our society. Having made that determination, it was faced with a choice between a number of reasonable alternative means of attacking that problem. It could, if it so decided, for example, have concentrated solely on the seller of narcotics and have refrained from imposing any sanctions on the user. Instead, it determined, and wisely I believe, that in order to effectively counteract drug abuse, it was necessary to impose sanctions on both the seller and the user of drugs. Rather than treating with equal severity all participants in drug transactions, however, the Legislature tempered the potential harshness of its action by imposing less stern penalties upon those who possess small amounts of drugs, realizing that the user is as much a victim of the crime as he is a criminal. At the same time, however, it has not neglected to place on a parity with the seller those who possess drugs either with intent to sell or in such large quantities as to fall within the ambit of the "legislative presumption that he who possesses a large amount of narcotics is a seller” (People v Broadie, 37 NY2d 100, 113).
Viewed thusly, the statutory framework provides neither reason nor support for any "agency defense”. The Legislature *91 has chosen to distinguish between those whose only crime is to possess relatively small amounts of drugs for their own use, and those who participate in and further the sale and distribution of illicit drugs to others. The agent, by definition, must fall within the latter category, regardless of whether his participation in the sale is motivated by a hope of profiting from the misery of others or by a misguided belief that it is in an addict’s best interests to obtain the drugs needed to assuage his habit. The agent may readily be distinguished from the buyer who purchases for personal use, for the latter is as much sinned against as sinning, and may with some reason be treated more gently. The agent, on the other hand, has made a knowing decision to aid in the distribution of drugs, something which is so clearly illegal. He does so not because he is driven to satisfy his own immediate needs, but for some other reasons — possibly a more selfless reason in the case of the "accommodation” agent, but in any case a more considered and less urgent reason. It does not seem unreasonable to treat such persons more harshly than one who possesses drugs for his personal use, for the latter is at least not contributing to the corruption of others. In any transaction involving an agent, that agent is an indispensable link in the chain of distribution. Since he is participating in the sale of narcotics to another, and is not simply obtaining drugs for his own use, his degree of culpability is greater than that of the buyer for personal use. The effect of the "agency defense” is to disrupt this carefully constructed system by the imposition of distinctions which are drawn from the law of agency and which are simply not pertinent to the legislative objective of eliminating drug abuse in New York.
Even were I to agree, however, that in some cases involving, for example, an "accommodation” agent, who simply accepts delivery of a small amount of already purchased drugs for a friend, some type of "agency defense” might be appropriate, I cannot agree that any valid public policy or purpose is served by the application of that "defense” in a case such as this. In the case before us, Roche stands convicted of the sale of four ounces of cocaine to an undercover police officer for some $4,000. The sale was the culmination of several meetings between the two, in the course of which Roche informed the officer that he sold "eighths” of cocaine on a regular basis and made about $500 on each eighth he sold. He also urged the officer to become involved in the drug business, telling him *92 that he could, easily make as much as $1,000 a week by selling drugs he could purchase from Roche. This testimony was uncontested, and I am appalled that an "agency defense” is to be premised solely upon the shadowy existence of "the man” to whom Roche supposedly delivered the money given him by the officer as well as upon the fact that Roche, like most dealers, obtained the drugs from someone else.
The picture presented by the testimony is not that of an "accommodation” buyer seeking to aid a friend; rather it is a portrait of a man who is deeply involved in narcotics sales as a business, and who attempted to recruit the police officer into his business as a pusher of drugs to be supplied by him. To even suggest that an "agency” concept is appropriate in such a situation is inconsistent with reality. This conclusion is buttressed by the fact that such a large amount of cocaine was involved. The Legislature, which in most situations treats the crime of possession more leniently than that of sale, has excepted from this pattern the possession of large amounts of illicit drugs. In such cases, the Legislature has indulged in the reasonable presumption that the possession is with an intent to sell, and so provides sanctions commensurate to those imposed on sellers. Indeed, as we have stated in another context, a person who possesses a large amount of drugs "is hardly less culpable or dangerous than the appellants who made 'street’ sales” (People v Broadie, 37 NY2d 100, 113, supra).
I am concerned, moreover, not merely with the absence of any statutory authority for the so-called "agency defense” (see People v Sierra, 45 NY2d 56, 60, decided herewith), but also with what I consider to be certain potential inconsistencies inherent in so vague a concept. Indeed, I believe that close examination of the various "agency defense” cases decided by this court today shows that even those on this court who agree that there does exist an "agency defense” are unable to agree as to its source, its ramifications, and its applications. In the present case, for example, the majority is requiring an "agency defense” charge although all the testimony at trial indicates that Roche was certainly more than a mere agent of the police. In People v Lam Lek Chong (45 NY2d 64, supra, decided herewith), however, the court is sustaining a conviction, in the face of what the majority characterizes as an erroneous "agency defense” charge, on the ground that no "agency defense” charge is necessary in that case because the *93 defendant there admitted that he hoped to obtain a collateral economic benefit as a result of the sale, although he denied that he was going to receive any direct profit from the sale itself. Finally, in People v Argibay (45 NY2d 45, decided herewith), the court is also sustaining the conviction of a defendant who was denied an "agency defense” charge. There the majority’s decision is based .upon the fact that all the People’s evidence at trial showed that Argibay was a middleman between the purchaser and the supplier. I see little difference between that case and this, since in both cases the respective defendants did not testify and the police testimony, if believed in full, would preclude an "agency defense”. On the other hand, there would appear to be as little in Argibay to preclude the jury from believing only a part of the police testimony as there is in the instant case. Indeed, in this case, as in Argibay, the portrait painted by the testimony is that of a middleman engaged in the sale and distribution of narcotics for profit. If anything, application of an "agency defense” concept is even less acceptable in this case than it would be in Argibay, because of the much greater amount of drugs involved here. Whatever possible justification may exist for an "agency defense” concept is certainly lacking in a case involving the sale of a large quantity of illicit drugs for resale. In short, I see no benefit to either the public or the law in recognizing a "defense” which is so uncertain of application.
I am also troubled by certain questions, not passed upon in these cases because of the posture in which they have reached us, but which may arise subsequently because of the court’s discussions of the "agency defense”. It is indicated, I believe, by the various opinions handed down today, that a majority of this court would agree that the term "agency defense” is a misnomer, since the concept propounded by the court is not a defense, but rather would negate the existence of an essential element of the crime charged, the sale itself. As such, it could be argued that in any case in which an "agency defense” charge could reasonably be demanded, it may well be a part of the People’s burden to prove the absence of agency. Looking to the realities of the rather murky world of the drug culture and of drug dealers, it is clear that such proof will often be well nigh impossible to obtain. Indeed, it would appear that the use of a few fairly simple ruses by a dealer would suffice to throw an impenetrable veil of confusion and uncertainty over his dealings and his status. In the present case, for *94 example, it might be argued that for the People to convict defendant it would be necessary to proffer proof as to the relationship between Roche and the mysterious third man. I cannot agree that this is or should be necessary under the existing statutory scheme. The Legislature has deemed it appropriate to forbid all drug transactions, not simply those which can be proven to be profit oriented or organized along the lines of more legitimate business ventures.
Accordingly, I must dissent from so much of the majority decision as affirms that part of the order appealed from which reversed defendant’s conviction for sale of a controlled substance. I am, of course, in full agreement with so much of the court’s decision as rejects defendant’s cross appeal from the affirmance of his conviction for possession of a controlled substance.
Judge Cooke concurs with Judge Fuchsberg; Chief Judge Breitel and Judges Jones and Wachtler concur in result in a concurring memorandum; Judge Gabrielli dissents in part and votes to modify in a separate opinion in which Judge Jasen concurs.
Order affirmed.