THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN WINDLEY, Appellant.

First Department, December 11, 1980

### APPEARANCES OF COUNSEL

*Joseph Goffman* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Peter Stevens* of counsel *(Allen Alpert* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

Ross, J.

The facts as detailed by our dissenting colleagues are sufficiently accurate so as not to require repetition here. At issue before us is whether the defendant was an agent of the purchaser, the undercover police officer, and whether the trial court's charge on the defense of agency was prejudicial to this defendant so as to require reversal of his conviction for criminal sale of a controlled substance in the third degree. We have concluded that defendant was not an agent

of the purchaser, but rather played an active role as seller of the contraband. Additionally, the trial court's statement on agency, when read in its entirety, was accurate, and we affirm the judgment of conviction.

As both dissenters concede, the question of defendant's status in this illegal transaction was a proper question for the jury, and one in which they accurately determined that defendant was a seller of drugs. This case cannot be viewed in a vacuum. It is important to remember that when the undercover officer drove to the prearranged locale, defendant was not the only individual on the street, but was part of a group of 12 men. After Officer McCann asked of this congregation "if anyone had dimes", defendant then voluntarily emerged from the crowd and inquired as to what McCann desired and in what quantity.

The defendant then called over his shoulder to codefendant Blue, "duay, duay". Blue then withdrew the requested amount of drugs from the cobblestones surrounding the base of a nearby tree. While Blue was retrieving the contraband, defendant remained by the unmarked car and told the undercover officer "all right, give me the money and you got to give me one dollar extra for me". The officer complied but only surrendered $20—one 10, one 5 and five 1-dollar bills—from the previously photostated $30 total. Defendant, however, demanded that McCann pay the additional dollar. McCann did as requested and gave defendant a five-dollar bill with defendant providing the appropriate change.

Blue now approached and handed the narcotics directly to McCann. At the urging of Blue, McCann immediately left the area.

A few minutes later defendant and Blue were arrested. Blue had in his possession the $20 of marked money while defendant was in possession of that "additional dollar".

Although both dissenting colleagues label defendant's receipt of that "sole dollar" as a tip, a reasonable reading of these facts, coupled with the realities of life, lead us to conclude otherwise. Although most of the money was seized from codefendant Blue, the latter could certainly have been

the middleman whose functions were to retrieve the drugs from its secreted location and to act as a "banker", holding the receipts until completion of the day's transactions. This dollar, which was furnished at the urgings of the defendant, was not a gratuitous offering by Officer McCann for defendant's co-operation. Rather, this stipend can reasonably be viewed as an attempt by defendant to obtain "a little extra" without having to fully account to his partner. The presence of this one-dollar bill which was seized from defendant, and its significance, raised a factual question for the sole determination of the jury. It is not for us to determine that the money was a tip, but it is simply another factor to be weighed by the jury.

The dissent in analyzing this case has termed defendant's participation and profit therein as *de minimus*. Defendant's role was anything but minimal. Although the profit to this defendant may have been small, can we then say as the dissent seems to indicate, that an approximate 5% extra yield on all drug transactions is *de minimus*. The profit motive is merely one of many factors to be considered in determining whether defendant is an agent of the buyer. Although one appellate court has stated that the profit motive should not be elevated "to the single most important factor" *(People v Peters,* 71 AD2d 641, 642), the Court of Appeals has indicated that receipt of a profit may be sufficient to establish an intent to sell *(People v Lam Lek Chong,* 45 NY2d 64, 75). In addition to profit, other factors which the jury may consider in evaluating a claim of agency are: "the nature and extent of the relationship between the defendant and the buyer, whether it was the buyer or the defendant who suggested the purchase, whether the defendant has had other drug dealings with this or other buyers or sellers" *(People v Lam Lek Chong, supra,* at p 75).

It is evident that defendant was not a tycoon, nor could he become one on this transaction; however, other factors are present which clearly demonstrate that defendant was not the agent of the buyer. These include the fact that defendant and the buyer had no prior relationship; defendant had known codefendant Blue for approximately 10 years; defendant took the initiative and made the sale possible; defendant displayed a thorough knowledge of street traf-

ficking in drugs; and defendant's over-all manner and actions substantiate that this was a well-choreographed, two-person drug operation, conducted by two street-wise entrepreneurs. The conclusion is inescapable that defendant fails to meet the standard of being a mere extension of the buyer, and, thus, the labeling of defendant as an agent of the buyer is incorrect because: "[t]o be an agent of his buyer, a narcotics merchant must be a mere extension of the buyer. He may act to procure what the buyer wants because the buyer has asked him to do so, but not out of any independent desire or inclination to promote the transaction." *(People v Argibay,* 45 NY2d 45, 53-54.)

It is inconceivable how this defendant fits within this description of an agent. Obviously, the defendant's actions indicated an "independent desire * * * to promote the transaction."

Defendant next assigns error to the court's charge on agency. The dissent would invoke our discretionary jurisdiction and review this unobjected-to charge. However, under the facts of this case, since the alleged error was not preserved no reason exists for us to review this claim. This is not such a case as would warrant the exercise of our discretion in the interests of justice under CPL 470.15 (subd 3, par [c]). Further, if we were to review the charge, there was no error. The charge on the defense of agency did not, as now contended, distort the criteria to be utilized in determining the factual question of agency.

Accordingly, the judgment, Supreme Court, New York County (GOODMAN, J.), rendered on November 2, 1979, *nunc pro tunc* as of June 22, 1978, convicting defendant after trial by jury, of the crime of criminal sale of a controlled substance in the third degree, should be affirmed.

SANDLER, J. (dissenting). Defendant was convicted after a jury trial of criminal sale of a controlled substance in the third degree and ultimately sentenced to an indeterminate term of imprisonment with a minimum of one and one-half years and a maximum of four and one-half years.

The principal trial issue as to this defendant was raised by the agency defense, a particularly persuasive defense here in light of the evidence presented by the People's

witnesses, indeed strong enough in my view to raise a serious question as to the legal sufficiency of the evidence.

The evidence discloses a "buy and bust" operation in the vicinity of Madison Avenue and 130th Street. An undercover police officer, Officer McCann, parked his vehicle near 10 to 12 persons standing near the curb and called out "if anyone had dimes." The defendant approached the officer's car and asked what he wanted. McCann replied that he wanted dimes. Meanwhile, the codefendant, Richard Blue, standing some feet behind the defendant, asked McCann if he wanted "Santa Claus," a term unfamiliar to the officer. Officer McCann repeated to the defendant that he wanted "dimes." The defendant asked him "how many dimes" and McCann replied that he wanted "two dimes."

The defendant called over his shoulder to Blue "duay, duay." Blue removed a quantity of glassine envelopes from the base of a tree some 15 feet away. While Blue was securing the glassine envelopes, defendant told McCann "all right, give me the money, and you got to give me one dollar extra for me." McCann gave Windley $20—one 10, one 5, and five 1-dollar bills—from the previously photostated money. Windley told McCann that he needed an additional dollar and McCann handed him an additional five-dollar bill from the marked money and received from the defendant four one-dollar bills in return.

Blue went over to the driver's window where Windley was standing and handed two glassine envelopes containing heroin to McCann. Blue then cautioned McCann to leave the area promptly since the area was "hot."

McCann left immediately and contacted his backup team, one of whom first arrested Windley, then retrieved a brown bag containing heroin from behind the tree, and thereafter arrested Blue.

Blue was in possession of $20 of the photostated money. Windley possessed only $1, and that dollar was one of the previously photostated bills.

Although the legal significance of these events with regard to the agency defense is open to legitimate disagreement, the factual reality seems clear and free from doubt.

The defendant, who had no money on his person at the time the undercover officer approached the group, attempted to receive, and in fact received, a $1 tip from the officer for assisting him in the purchase of the two "dime" bags of heroin.

I agree that in the several decisions of the Court of Appeals defining the criteria to be considered by a jury in evaluating the agency defense, there is language which would sustain the legal sufficiency of the jury's verdict of guilt here. (See *People v Lam Lek Chong*, 45 NY2d 64, 75; *People v Argibay*, 45 NY2d 45, 53-54.) Whether these expressions are applied meaningfully to the truly *de minimus* event developed in this trial seems to me at least open to doubt, but I am inclined to the view that the evidence presented a factual issue for the jury.

However, in the trial court's carefully detailed, for the most part unobjectionable, charge on agency, there appeared at several points overly broad phrases that could easily have been interpreted by the jury as requiring rejection of the agency defense in a factual situation which at best from the prosecution's standpoint made that issue a very close jury question. Most significantly, the trial court instructed the jury in pertinent part that if they were persuaded beyond a reasonable doubt "that the defendant Calvin Windley was in any way associated with the seller of the drug * * * you must conclude that the defendant Calvin Windley did not act solely as an agent for the buyer".

This clearly overbroad statement had an obvious potential for prejudice since the codefendant Blue had testified that he had known Windley for many years. Although not objected to by defense counsel, this erroneous instruction justifies exercise of our jurisdiction to reverse "[a]s a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]) given the nature of the incident, the close factual question presented, and the prejudicial nature of the instruction.

Accordingly, the judgment of the New York Supreme Court, New York County (GOODMAN, J., and jury), rendered November 2, 1979, *nunc pro tunc* June 22, 1978,

convicting defendant of criminal sale of a controlled substance in the third degree and sentencing him to one and one-half years to four and one-half years, should be reversed, and the case remanded for further proceedings.

CARRO, J. (dissenting). Admittedly, this appellant straddled the sometimes fine line between broker or middleman, for which he would bear the liability of a seller (*People v Argibay*, 45 NY2d 45), and an agent of the buyer which, as a defense, would immunize him from that liability (*People v Roche*, 45 NY2d 78; *People v Lam Lek Chong*, 45 NY2d 64, 73). The determination as to whether he was one or the other was one of fact for the jury as "[i]t follows that, so long as there is some reasonable view of the evidence that the defendant acted as a mere instrumentality of the buyer, determination of the existence of an agency relationship should be submitted to the jury with appropriate instructions" (*People v Roche, supra,* p 86) and with the burden of proof upon the People to negate the defense of agency, beyond a reasonable doubt.

Unfortunately, here, while the question was submitted to the jury, that jury may well have been misled by an overly broad charge, thereby causing what may be an unjust result.

On July 19, 1977 a team of police officers conducted a "buy and bust" naroctics operation in the vicinity of Madison Avenue and 131st Street. Undercover Officer McCann, carrying bills which had been photostated, drove to that location, where 10 or 12 people were standing near the curb. McCann called out from his automobile asking if anyone had "dimes" ($10 "bags" of heroin). Appellant Calvin Windley came over to the auto and asked McCann what he wanted. McCann replied, "dimes". Codefendant Richard Blue, standing a few feet behind Windley, asked McCann if he wanted "Santa Claus". McCann, unfamiliar with that term, ignored Blue. He again told Windley that he wanted "dimes". Windley asked how many, and McCann replied "give me two". Windley called over his shoulder, "duay, duay". Blue walked to a tree about 15 feet from the auto. He bent down, reached among the cobblestones at the base of the tree and removed some glassine envelopes.

Windley said, "all right, give me the money and you got to give me one dollar extra for me". The officer gave Windley a 10, a 5 and 5 singles. Appellant counted it and said, "no good, you got to give me another dollar". McCann gave him a five-dollar bill and appellant returned four singles. As Blue was returning to the car, another person walked over to the tree and Blue yelled at him to get away. Appellant said and did nothing. Blue then walked to the car and handed McCann two glassine envelopes. He said, "you'd better get out of the area fast, it's hot". At no time did appellant handle any of the glassine envelopes.

The officer then left the area and made a transmission to his backup team, which arrested Windley and Blue and recovered narcotics from the cobblestones at the base of the tree. Blue was found to have $20 in recorded bills in his possession, while only a single dollar bill was found on appellant. Both were convicted of criminal sale of a controlled substance in the third degree, the only count submitted to the jury. After returning with a verdict of guilty as to Blue, the jury requested further instructions on the defense of agency as to Windley. It subsequently also returned a guilty verdict as to him. He was sentenced to one and one-half years to life imprisonment, but was later resentenced to a term of one and one-half to four and one-half years.

In instructing the jury as to the agency defense the court stated, in summary, "If you find that there is evidence beyond a reasonable doubt that the defendant Calvin Windley was in any way associated with the seller of the drug or acted in business with the seller of the drug, or that he was associated in any way with the enterprise of the seller, *or that he had any personal or financial interest* in bringing trade to the seller, then you must conclude that the defendant Calvin Windley did not act solely as an agent for the buyer and therefor your verdict will be guilty provided you find that all of the other elements of the crime have been proven beyond a reasonable doubt." (Emphasis added.)

By his listing of the factors disjunctively, and equating each with guilt, the court appeared to be instructing the

jury that they must find guilt solely on the basis of appellant's financial interest (i.e., the one dollar) in the transaction—even if they might otherwise view that single dollar as a "tip" and appellant's action as an accommodation of the buyer.

The court also stated, "if you find that the sale for which defendant has been charged is part of a common plan or scheme, then you cannot conclude that the defendant merely acted as an agent of the buyer in this transaction" thereby injecting into the jury's consideration of the case the question of whether or not this sale was part of a common scheme or plan, i.e., one of several or many, whereas nowhere in the record does any evidence exist of such scheme or of more than one sale.

Immediately following the charge on the agency defense, the court gave a fairly standard charge on "acting in concert", containing the following language:

"When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct, when acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes or intentionally *aids* such person to engage in such conduct.

"Under this general provision of law, the guilt of a defendant may be established without proof that the defendant did each and every act constituting the crime charged.

"Every person who intentionally *participates* in the commission of a crime may be found guilty of that very crime. Their presence at the scene of the crime is not sufficient.

"Participation is intentional if done voluntarily and purposefully, and with a specific intent to do some act which the law forbids.

"Soliciting or requesting another person to commit a crime, or intentionally *aiding* another person to commit a crime, constitutes participation * * *

"The degree or the extent to which a defendant intentionally participates in the commission of a crime is immaterial in affixing his responsibility but when two or more

persons act together in the commission of a crime, *the law does not stop to apportion the percentage of guilt* that may attach to each of them.

"A Jury in a criminal case is not called upon to find for example, that one person is 60 per cent guilty and the other person 40 per cent guilty. *The rule is that a person who intentionally aids in the commission of a crime is himself guilty of that crime*." (Emphasis added.)

Unfortunately, this otherwise correct language was not immediately and sufficiently modified with the caveat that it was subject to the agency defense. It must have been misleading to this jury and may well have resulted in a conviction simply because the act of the appellant in fact did aid in the commission of the crime.

The restatement by the court of the pertinent section of its charge at the jury's request to again define agency was insufficient to correct the misleading effect of the original charge.

Appellant did not preserve the issue of the correctness of these portions of the charge as a question of law by appropriate exception below. However, "[u]nlike the Court of Appeals, the Appellate Division as an intermediate court of review has broad power to review questions of fact and discretion as well as questions of law (see CPL 470.15, 470.30). Hence, the Appellate Division, if it deems it appropriate, may exercise its discretionary power to review alleged errors even in the absence of that timely objection which is necessary to create a question of law". (*People v Cona*, 49 NY2d 26, 33.)

The conviction should be reversed and the matter remanded for a new trial in the interest of justice and the exercise of discretion.

FEIN, J. P. and BLOOM, J., concur with ROSS, J.; SANDLER and CARRO, JJ., dissent in separate opinions.

Judgment, Supreme Court, New York County rendered on November 2, 1979, *nunc pro tunc* as of June 22, 1978, affirmed.