THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JANET SIMPSON, Also Known as LYNN, Respondent.

First Department, March 18, 1982

APPEARANCES OF COUNSEL

*Susan Stern* of counsel (*Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Benjamin Brafman* for respondent.

OPINION OF THE COURT

FEIN, J.

Based upon a careful and thoughtful opinion, the Trial Justice granted defendant's motion to set aside the jury's verdict which had convicted defendant of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41, subd 1) and criminal sale of a controlled substance in the third degree (Penal Law, § 220.39).

The Trial Justice concluded that the refusal to charge on the agency defense, as requested, entitled defendant to a new trial because such refusal "would require a reversal as a matter of law if raised upon an appeal" (CPL 330.30, subd 1), since there was "'at least *some* evidence, *however slight,* to support the inference that the supposed agent was acting, in effect, as an extension of the buyer'" (citing *People v Argibay,* 45 NY2d 45, 55, cert den *sub nom. Hahn-DiGuiseppe v New York,* 439 US 930, emphasis by the Trial Justice).

Although a determination by a Trial Justice setting aside a jury verdict is entitled to great deference, we disagree that there was sufficient evidence to require an agency charge in this case. "[O]n no reasonable view could a jury have found defendant to be merely an agent." (*People v Lam Lek Chong,* 45 NY2d 64, 76, cert den 439 US 935.)

A defendant is entitled to an agency charge only where there is "some view of the evidence" upon which a trier of the facts could find that the defendant, in selling the controlled substance, was acting "only as an agent for the buyer" (*People v Argibay,* 45 NY2d, at p 53). There must be evidence that the defendant acted as a mere agent or extension of the buyer without an independent desire or inclination to promote the transaction (*People v Lam Lek Chong, supra; People v Argibay, supra*).

The evidence established that the Organized Crime Control Bureau of the police department was investigating defendant's involvement in the sale of narcotics in December, 1978, based upon information received from a confidential informant, one Juliano, who had reported that defendant was using and selling cocaine in her East 24th Street apartment, and was paying a fee for new customers brought to her. Juliano arranged an appointment on January 17, 1979 in defendant's apartment where he introduced an undercover police officer, Maria Zapata, to defendant who called herself "Lynn". Zapata told defendant that she, Zapata, wished to purchase one-quarter ounce of cocaine. Defendant stated she did not have that much on hand but was planning to get some that evening, and would advise Zapata when she had the required amount. Defendant

suggested that Zapata buy the two and one-half grams which defendant had in her apartment. The transaction was then and there completed for $200, after defendant weighed the substance on a chemist's scale in her bedroom in Zapata's presence and furnished Zapata with a "taste".

A few days later, defendant told Juliano that she had one-quarter ounce for sale. That information was communicated to Zapata, who telephoned defendant on January 24, 1979 and made arrangements to purchase it the following day. On January 25, Zapata went to defendant's apartment and was told that one-quarter ounce would cost $500. Defendant refused to bargain for a lower price, although Zapata made an attempt to bargain. Defendant stated she would not make any money on the transaction if she had to reduce the price. She claimed it was a better lot than the prior sale.

When Zapata agreed to buy the cocaine, it was weighed on defendant's scale in the apartment and found to be two grams short. Zapata at first refused to pay except for the actual amount offered for sale. Defendant declined to take less than $500, claiming she needed that sum to pick up more cocaine which she said she was going out to get as soon as she dressed. Defendant told Zapata that the additional two grams would be available later in the day and that Zapata should call defendant at 4:00 P.M. Zapata did so but was unable to reach defendant on the phone until 7:30 P.M. Defendant said the cocaine had not yet been mixed or diluted and told Zapata to call the following day. Although Zapata had a great deal of trouble reaching defendant the next day, she finally succeeded in doing so after a number of phone calls.

Zapata then went to defendant's apartment, at which time defendant gave Zapata the additional two grams of cocaine for which Zapata had paid. Zapata subsequently identified defendant at the time of defendant's arrest.

This recital of the evidence is based upon the testimony of Zapata and Juliano. Although defendant testified in her own behalf and did not deny that Zapata and Juliano had been at her apartment, she denied any sale of cocaine. Defendant asserted that she was a prostitute earning

$1,500 to $2,000 per week. She claimed the visits of Zapata related to the possible sale of clothing which defendant stated she was selling for a friend. Defendant admitted knowing Juliano, the informant. She said he referred prostitution customers to her, for which she permitted him to store cocaine in a jar in her bedroom. She used some of the cocaine with Juliano's permission. Defendant claimed that Juliano had left packages, contents unknown, for Zapata at defendant's apartment.

We agree with the People's contention that the verdict of the jury should be reinstated because under no reasonable view of the evidence could the defendant be considered an agent of the narcotics buyer. There is no evidence that defendant participated in the sale of narcotics out of a desire to accommodate a friend and not for commercial purposes. There must be some evidence that the defendant acted as a mere instrumentality of the buyer in order to entitle defendant to an agency charge.

The decision of the Trial Justice enumerated the relevant factors in determining whether an agency charge is warranted, as spelled out in *People v Argibay* (*supra*) and the other cases decided with it (*People v Sierra,* 45 NY2d 56; *People v Lam Lek Chong, supra; People v Roche,* 45 NY2d 78, cert den 439 US 958; *People v McLeod,* 45 NY2d 95). The Trial Justice noted that some of the factors were present, but overlooked the teaching of these cases that all of the circumstances must be examined in determining whether a defendant is entitled to the charge.

The facts here are very similar to those in *Argibay,* where it is stated (45 NY2d, at p 55): "In sum, an agency charge is not required simply because it appears that a seller of narcotics did not personally grow, import, or manufacture the illicit substance. If it were, an agency charge would be mandated as a matter of course when sale of narcotics is alleged. Instead, the agency charge should be reserved for cases where there is at least some evidence, however slight, to support the inference that the supposed agent was acting, in effect, as an extension of the buyer."

As noted by the Trial Justice, the factors outlined in the cited cases are:

(1) Did defendant act as a mere agent or extension of the buyer with no independent desire to promote the transaction?

(2) Was the purchase suggested by the buyer?

(3) Did defendant have any previous acquaintance with the seller?

(4) Did defendant exhibit any salesmanlike behavior?

(5) Did defendant use her own funds to procure the substance?

(6) Did defendant procure the narcotics from several sources?

(7) Did the buyer pay the seller directly?

(8) Did defendant stand to profit by the transaction?

(9) Did the purchaser promise any reward to the seller in advance?

(See *People v Gonzales,* 66 AD2d 828.)

The Trial Justice concluded that because some of these factors were present there was sufficient evidence of agency, albeit "slight". However, this disregarded the totality of circumstances. The mere coincidence of one or more of these factors is insufficient. It is clear that the first purchase was invited by defendant after the police officer indicated an interest in purchasing a quarter ounce based on Juliano's advice that the defendant wished to make the sale. However, this was not a suggestion that the defendant purchase or obtain the substance from another, as would be the case were the defendant the buyer's agent. Plainly with respect to the first transaction the narcotics were present in the defendant's apartment. She then and there sold the entire quantity for cash at a price fixed by her at her first meeting with the officer, although the officer sought a larger quantity. The defendant's suggestion that the officer buy the lesser quantity because that was all defendant had at the moment patently demonstrates salesmanlike behavior. It is also plain that the police officer paid the seller directly. There was no evidence that the seller was acting as an intermediary for the buyer in purchasing the narcotics from some other person. Obviously some or all of the proceeds would be used to

purchase more narcotics, if desired, but this is hardly evidence of agency. It is the usual business transaction. There is no showing of defendant's source. What is clear is that she was acting either as a retailer or middleman for a seller, not as an agent for the buyer.

The Trial Justice suggested that because the first sale was based on an introduction by the informant Juliano, the jury could find that since the transaction was initiated by him, defendant was merely acting as his agent. The difficulty is that there is no evidence in the case to support such a conclusion. Moreover, even if found, this would not demonstrate that defendant was the buyer's agent or acting as an extension of the buyer (*People v Argibay,* 45 NY2d, at p 54; *People v Roche,* 45 NY2d, at p 85; *People v Lam Lek Chong, supra*). Nor is there any merit to the Trial Justice's assertion that a jury could find an agency relationship if it determined that the narcotics were in the apartment for defendant's own use and that she would have to go out and shop for a replacement supply. This would hardly show she was acting as an agent to accommodate the officer. It would demonstrate only that she was selling her own property for a profit.

The Trial Justice concluded with respect to the second sale that since this was at the officer's request, a jury could find that the defendant acted merely to accommodate the officer. However, the evidence is that at the time of the first sale there was a discussion about a subsequent sale of greater quantity because at that time the amount sold was less than the amount desired. That the defendant said she would obtain more narcotics for sale to the officer cannot be viewed as evidence of agency, else every instance where the seller does not have the narcotics in his or her immediate possession would require an agency charge. The fact that the officer telephoned defendant at Juliano's insistance, to inquire whether defendant had acquired a sufficient quantity, is plainly not evidence of agency. Nor is the fact that the officer had to make several calls in order to obtain the balance of the narcotics for which she had paid. This evidence makes it manifest that defendant was acting as a merchant, not as an agent for the buyer. She sold the buyer a larger quantity than she had on hand, obtained the

full price for it, and then delayed the buyer before furnishing the balance. As the Trial Justice noted, defendant said she wanted to make money on the transaction, and Juliano testified as to defendant's other drug dealings. These are telltale signs that defendant was a merchant, not an agent.

There is no evidence on this record, however slight, that the defendant was acting as an agent to accommodate the buyer. It is not sufficient merely to isolate one or two of the factors and to conclude without any other support in the record that the presence of these factors is sufficient. The test is whether there is a pattern emerging from the evidence as a whole from which agency can be inferred. (*People v Argibay, supra; People v Lam Lek Chong, supra.*)

We do not pass upon defendant's motion to set aside the verdict upon the ground of ineffective assistance of counsel. Such issue is not before us since it was not passed upon by the Trial Justice, in view of her determination to set aside the verdict because of the failure to give an agency charge. Although we are not unaware that the Trial Justice indicated that she might be favorably disposed to grant such motion, the issue is not here.

Accordingly, the order, Supreme Court, New York County (SOLOFF, J.), entered March 20, 1981, granting defendant's motion to set aside the jury's verdict convicting defendant of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41, subd 1) and criminal sale of a controlled substance in the third degree (Penal Law, § 220.39), should be reversed, on the law, the motion denied, the verdict reinstated, the action remanded for further proceedings, and defendant directed to surrender, without prejudice to such further application as defendant may deem advisable.

CARRO, J. P., SILVERMAN, BLOOM and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on March 20, 1981, unanimously reversed, on the law, the motion to set aside a jury verdict denied, the verdict reinstated, the action remanded for further proceedings, and defendant directed to surrender, without prejudice to such further application as defendant may deem advisable.