■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD GREENE, Appellant.—Appeal by the defendant from (1) a judgment of the Supreme Court, Queens County (Groh, J.), rendered March 28, 1989, convicting him of criminal sale of a controlled substance in the third degree and unlawful possession of marihuana, under Indictment Number 8450/87, upon a jury verdict, and imposing sentence, and (2) a judgment of the same court, rendered March 28, 1989, convicting him of burglary in the third degree, under Indictment Number 3072/88, upon his plea of guilty, and imposing sentence.

Ordered that the judgment rendered March 28, 1989, under Indictment Number 8450/87, is modified, on the law, by reversing the conviction for criminal sale of a controlled substance in the third degree and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for a new trial on that count of the indictment; the facts have been considered and are determined to have been established; and it is further,

Ordered that the judgment rendered March 28, 1989, under Indictment Number 3072/88, is affirmed.

The defendant's conviction of criminal sale of a controlled substance in the third degree under Indictment Number 8450/87, arose out of a "buy and bust" operation which was conducted on December 10, 1987. An undercover officer approached the defendant and a Mr. Blackenship who were standing on a street corner in Queens. The undercover officer asked the two men if anybody had cocaine. Blackenship told

the defendant "to [t]ake him to the spot". The defendant took the undercover officer for a two-block walk. Once they arrived at the "spot", the undercover officer was told to wait there. Meanwhile, the defendant crossed the street and approached a Hispanic male, who was never apprehended. The defendant returned and, according to the undercover officer's direct testimony, stated: "All we have is halves of cooked cocaine". However, on cross-examination, the undercover officer testified that, upon the defendant's return, the defendant stated that: "he has halves of grams of cooked cocaine". The defendant told him the cost was $25 for each half. The undercover officer gave the defendant $50 of prerecorded buy money for two halves. The defendant crossed the street and approached the Hispanic male. The undercover officer saw the defendant exchange the money for something small. The defendant returned and handed the undercover officer two small foil packets. The undercover officer left the vicinity and the defendant was ultimately arrested by the backup team.

On the instant appeal, the defendant argues that the trial court's denial of his request for a jury instruction on the agency defense constitutes reversible error. We agree.

It is well settled that the following elements must be considered in determining whether a defendant is an agent of the buyer: "(1) did the defendant act as a mere extension of the buyer throughout the relationship, with no independent desire to promote the transaction; (2) was the purchase suggested by the buyer; (3) did the defendant have any previous acquaintance with the seller; (4) did the defendant exhibit any salesmanlike behavior; (5) did the defendant use his own funds; (6) did the defendant procure from many sources for a single buyer; (7) did the buyer pay the seller directly; (8) did the defendant stand to profit; and (9) was any reward promised in advance" *(People v Gonzalez,* 66 AD2d 828; *see also, People v Lam Lek Chong,* 45 NY2d 64, *cert denied* 439 US 935; *People v Argibay,* 45 NY2d 45, *cert denied sub nom. Hahn-DiGuiseppe v New York,* 439 US 930).

Viewing the evidence "in the light most favorable to the defendant, as we must on this issue" *(People v Kirk,* 143 AD2d 683, 685), we find that there is a reasonable view of the evidence that the defendant was acting as an agent of the buyer *(see, People v Argibay, supra).* The defendant neither initiated the drug transaction nor used his own funds to consummate the purchase. There was no evidence that the defendant stood to profit from the instant sale, nor was he promised any reward in advance. Although the defendant's

alleged use of the pronoun "we", is troublesome, the undercover officer, on cross examination, testified that the defendant used the pronoun "he", which could have referred to the unapprehended Hispanic male. Viewed within that framework, the facts at bar are distinguishable from those in *People v Ladson* (153 AD2d 592). In *People v Ladson (supra),* the pronoun used by the defendant was, without question, "we", and the context in which it was used was more damaging than that at bar. Specifically, in *People v Ladson (supra),* the undercover officer slipped $10 of buy money under a door and a vial fell from a hole at the top of the door. The officer indicated that she was unable to locate the vial, at which point the defendant walked up to the officer and said that the officer had to find it because "we can't replace it" *(People v Ladson, supra,* at 593). In affirming the trial court's rejection of a requested agency change, this court stated: "The defendant expressly admitted that he was a member of the drug-selling operation when he admonished the undercover officer that she had to locate the vial because 'we can't replace it' (emphasis supplied)" *(People v Ladson, supra,* at 593).

The other cases relied on by the dissent, as well as several other recent cases from this court, are either (1) irrelevant, in that they involve situations where the agency defense was charged by the court and disproved by the People beyond a reasonable doubt *(see, e.g., People v Serrano,* 163 AD2d 66; *People v Cruz,* 162 AD2d 383; *People v Lucas,* 162 AD2d 273; *People v O'Connor,* 168 AD2d 643; *People v Cajigas,* 168 AD2d 628; *People v Overton,* 168 AD2d 575), or (2) distinguishable on the facts *(see, People v Carter,* 151 AD2d 688; *People v Torres,* 150 AD2d 816; *see also, People v McDonald,* 165 AD2d 837; *People v Moreno,* 161 AD2d 806; *People v Lemmerman,* 160 AD2d 733; *People v Perry,* 159 AD2d 593; *People v Guzman,* 156 AD2d 715).

With respect to the defendant's conviction of burglary in the third degree, upon his plea of guilty under Indictment Number 3072/88, it should be noted that the defendant has already served his sentence on that conviction. Moreover, we have reviewed the record and agree with the defendant's assigned counsel that there are no nonfrivolous issues which could be raised on this appeal. Counsel's application for leave to withdraw as counsel is granted *(see, Anders v California,* 386 US 738; *People v Paige,* 54 AD2d 631; *cf., People v Gonzalez,* 47 NY2d 606). Mangano, P. J., Kunzeman and Lawrence, JJ., concur.

Balletta, J. concurs in part and dissents in part and votes to

affirm the judgments of conviction under both Indictment Number 8450/87 and Indictment Number 3072/88, with the following memorandum, in which Eiber, J., concurs. I respectfully disagree with my colleagues in the majority and vote to affirm the defendant's conviction of criminal sale of a controlled substance in the third degree.

The essential facts are as set forth in the majority's decision; however, there are several other relevant details. After Mr. Blackenship had told the defendant to take the undercover officer to the "spot", the defendant told the officer to follow him. During the two-block walk to the "spot", the defendant attempted to sell a radar detector to the officer. Moreover, on cross-examination, the officer read from his buy report that the defendant had returned from talking with the Hispanic male and had told him that "all he had was half grams of crack", the "he" being a reference to the defendant himself. When the officer indicated to the defendant that he would take two halves, the defendant told him to give him money, which the officer did.

Contrary to the defendant's contention on appeal from the judgment rendered under Indictment Number 8450/87 and contrary to the majority's determination, I am of the opinion that the trial court did not err in denying his request for an agency defense charge. It is well established that where there is some reasonable view of the evidence that the defendant acted as an instrumentality of the buyer rather than as a seller, the court must, upon a timely request, charge the jury as to the defense of agency (see, People v Roche, 45 NY2d 78, cert denied 439 US 958; People v Argibay, 45 NY2d 45, cert denied sub nom. Hahn-DiGuiseppe v New York, 439 US 930; People v Miano, 143 AD2d 777). In the case at bar, no reasonable view of the evidence would support a finding that the defendant was a mere instrumentality of the buyer (see, People v McDonald, 165 AD2d 837; People v Guzman, 156 AD2d 715). Therefore, he was not entitled to a charge on agency (see, People v Perry, 159 AD2d 593; People v Carter, 151 AD2d 688).

The defendant's escorting of the undercover officer, whom he had never met before, to the "spot", as well as his return to the officer, after having spoken to the unapprehended Hispanic male, to tell him that either "we" or "he" only had half grams for sale and that the officer should give the defendant the money, all indicated an independent interest and salesmanlike behavior in seeing the transaction to fruition (see, People v Serrano, 163 AD2d 66; People v Cruz, 162

AD2d 383; *People v Lucas,* 162 AD2d 273; *People v Torres,* 150 AD2d 816). Moreover, the defendant's conduct, together with his statement that "we" or "he" only had half grams of cocaine, indicate that he was a streetwise member of a drug-selling operation *(see, People v O'Connor,* 168 AD2d 643; *People v Cajigas,* 168 AD2d 628; *People v Overton,* 168 AD2d 575; *People v Ladson,* 153 AD2d 592).

Despite the majority's characterization of the events, it cannot reasonably be said that the defendant was a mere extension of the buyer in this case.